HUTCHINSON, A.K.A. HUTCHISON, APPELLANT, *v.* OHIO FERRO ALLOYS
CORPORATION; MIHM, ADMINISTRATOR, ET AL., APPELLEES.

[Cite as *Hutchinson v. Ohio Ferro Alloys
Corp.* (1994), 70 Ohio St.3d 50.]

(No. 93–319—Submitted February 23, 1994—Decided August 10, 1994.)

*James C. Ayers Law Office* and *Jeffrey Decile;* and *W. Allen Wolfe,* for appellant.

*Lee Fisher,* Attorney General, and *William J. McDonald,* Assistant Attorney General, for appellees.

*Stewart R. Jaffy* and *Marc J. Jaffy,* urging reversal for *amici curiae,* United Steelworkers of America, AFL–CIO and Ohio Academy of Trial Lawyers.

PFEIFER, J.  The sole issue before this court is whether a claimant can prove a scheduled disease using the general definition of "occupational disease" provided by R.C. 4123.68.  We hold that a claimant may do so.

R.C. 4123.68 (now R.C. 4123.01[F]) defined an "occupational disease" as:

"a disease contracted in the course of employment, which by its causes and the characteristics of its manifestation or the condition of the employment results in a hazard which distinguishes the employment in character from employment generally, and the employment creates a risk of contracting the disease in greater degree and in a different manner than the public in general."

R.C. 4123.68 also provided a non-exclusive schedule of diseases which "shall be considered occupational diseases and compensable as such when contracted by an employee in the course of the employment in which such employee was engaged and due to the nature of any process described in this section."

The schedule is non-exclusive because R.C. 4123.68 further provided that "[a] disease which meets the definition of an occupational disease is compensable pursuant to Chapter 4123. of the Revised Code though it is not specifically listed in this section."

Finally, we make our decision under the statutory mandate of liberal construction.  R.C. 4123.95 states that "[s]ections 4123.01 to 4123.94, inclusive, of the Revised Code shall be liberally construed in favor of employees and the dependents of deceased employees."

R.C. 4123.68 states that a disease satisfying the general definition of an "occupational disease" is compensable.  The jury was properly instructed as to the general definition of "occupational disease."  The general statutory definition does not require the presence of nodules.  The jury's general verdict and interrogatory answers reflect that plaintiff did prove that decedent's disease was an occupational disease according to the general statutory definition.

That silicosis appears as a scheduled disease is irrelevant.  Where an injured worker proves that he suffered an occupational disease as a result of his employment, nothing further need be proven.  Proof of the three definitional criteria of "occupational disease"—causal connection, hazard and risk—creates a compensable claim, regardless of whether the disease is scheduled or non-scheduled.

R.C. 4123.68 could, but does not, say that a disease listed in the schedule can only be an occupational disease if it meets the schedule.  Reading that restriction into the statute not only disregards the statute's plain language, but also violates the statutory mandate to liberally construe the statute in favor of employees and

the dependents of deceased employees. We therefore reverse the judgment of the appellate court.

*Judgment reversed.*

A.W. Sweeney, Douglas, Resnick and F.E. Sweeney, JJ., concur.

Moyer, C.J., and Wright, J., dissent.

Moyer, C.J., dissenting. I dissent because it is clear that the General Assembly intended that the occupational disease of silicosis could be proven only by a showing that the claimant (or decedent) had "a disease of the lungs caused by breathing silica dust (silicon dioxide) producing fibrous nodules distributed through the lungs and demonstrated by x-ray examination, by biopsy or by autopsy." R.C. 4123.68(X). One needs no technical rule of statutory construction to conclude that, had the General Assembly intended that the existence of silicosis in the lungs of a claimant could be proven pursuant to the standards for proving a non-scheduled disease, it would not have precisely defined the disease as it did in R.C. 4123.68. The only reasonable conclusion to be drawn from the precise definition of silicosis in the statute is that there must be an objective finding that fibrous nodules are or were distributed through the lungs of the claimant. In this case, neither the evidence nor the jury indicates that to be the fact.

Although the majority opinion does not do so, appellant relies upon the case of *State ex rel. Gen. Motors Corp. v. Indus. Comm.* (1975), 42 Ohio St.2d 255, 71 O.O.2d 230, 327 N.E.2d 761. The case is close on its facts but not close enough to be controlling. In *General Motors,* all parties agreed that the claimant had "contact dermatitis," which was a listed disease in R.C. 4123.68 but not defined as precisely as is silicosis. The issue in *General Motors* was whether the claimant had contracted the disease from any of the industrial processes listed in the statute, and the court held " * * * that where a claimant alleges contracting an occupational disease which is nonscheduled in R.C. 4123.68, or which is scheduled but not alleged to be due to the nature of any process described in the same subsection, then recourse may be had to subsection (BB) for an award of compensation." *Id.* at 258–259, 71 O.O.2d at 232, 327 N.E.2d at 764.

I would not expand the holding of *General Motors* that permitted a claimant to show that she had contracted a disease from a source other than a source designated in the statute to hold that a claimant could, in effect, change the statutory definition of a disease to receive compensation.

The judgment of the court of appeals should be affirmed.

Wright, J., concurs in the foregoing dissenting opinion.