PIERCE, Appellee, et al.

v.

TRIMBLE, Appellant, et al.█

[Cite as *Pierce v. Trimble* (1995), 101 Ohio App.3d 690.]

Court of Appeals of Ohio,
Second District, Champaign County.

No. 94–CA–21.

Decided March 15, 1995.

*Jack L. Johnson*, for appellant Siemens Energy & Automation, Inc.

*Deborah J. Adler*, for appellee Wes Trimble.

*Betty D. Montgomery*, Attorney General, and *Melanie Cornelius*, Assistant Attorney General, for appellee Industrial Commission.

FAIN, Judge.

Defendant-appellant, Siemens Energy & Automation, Inc., appeals from the judgment of the trial court in which the jury found that plaintiff-appellee, Brenda A. Pierce, contracted a compensable nonscheduled occupational disease, known as "overuse syndrome," in the course of her employment with Siemens. Siemens argues that the trial court erred when it denied Siemens's motions for directed verdict because overuse syndrome does not meet the statutory definition of a "compensable nonscheduled disease" under R.C. 4123.68 and, thus, that the judgment is contrary to law. We overrule Siemens's assignments of error and find that the judgment was supported by competent, credible evidence on all of the elements of Pierce's claim.

I

Brenda A. Pierce worked at Siemens from April 1979 until the fall of 1991, with some extended laid-off periods in the early and middle 1980s. Pierce alternated several final assembly jobs making fuse clips. She also worked on an E-frame, worked in the plastics department cutting fiber with a knife, and tested, packed, and shipped various finished fuse clips.

When assembling fuse clips on the kit press, Pierce had to sit in an uncomfortable position to operate foot pedals at the back of the press and, at the same time,

had to push buttons with her hands while using a screwdriver to set the springs on the clips properly or while using an Allen wrench to loosen a screw. Over three hundred clips an hour could be assembled on the kit press. On the automatic press during an eight-hour shift, an assembler could put together about eight hundred or nine hundred clips per hour.

Sometime in 1988, Pierce began having intermittent pain, numbness, and tingling in her right hand and arm that later spread to her neck and shoulder. She testified that a couple of times while driving home from work her right hand would become numb and fall off the steering wheel. She attributed her problems to sitting in the same position for an entire shift and repetitively rotating her wrist to use a screwdriver or Allen wrench several hundred times an hour.

Pierce informed Siemens of her problems and was referred to the Occupational Medicine Center at Wilson Hospital in Sidney, Ohio, where she was evaluated by Dr. Fred R. Hussman, a family practitioner. Pierce later saw Dr. Allen E. Moore, a chiropractor. Both doctors independently diagnosed her condition as overuse syndrome caused by the repetitive movements she performed on her job. Both later ruled out carpal tunnel syndrome and tendinitis.

After she saw Dr. Hussman but before he had arrived at a diagnosis, Pierce filed an occupational disease claim application for workers' compensation alleging possible carpal tunnel syndrome or tendinitis affecting her hands, wrists, shoulders, and upper back. The Industrial Commission denied her application. Pierce appealed to the Court of Common Pleas in Champaign County, requesting a jury trial. After Pierce's case in chief and at the close of the evidence, counsel for Siemens moved for a directed verdict, which the trial court denied both times. The jury found that Pierce was entitled to participate in the Workers' Compensation Fund. The jury, in response to a special interrogatory, found that Pierce had contracted the occupational disease of overuse syndrome. Siemens appeals the judgment of the trial court.

## II

Because Siemens's three assignments of error address whether Pierce presented evidence on two of the three elements of a compensable nonscheduled occupational disease under R.C. 4123.68 to withstand motions for directed verdict, and whether the jury verdict is contrary to law, we shall address these assignments of error together. Siemens's assignments of error are as follows:

"The trial court erred when it refused to grant defendant, Siemens Energy & Automation, Inc.'s motion for judgment for the defendants at the close of plaintiff's case.

"The trial court erred when it refused to grant defendant, Siemens Energy & Automation, Inc.'s motion for judgment for the defendants at the close of all the evidence.

"The verdict of the jury is, as a matter of law, contrary to law for the reason that the occupational disease allowed by the jury, 'overuse syndrome,' is not an occupational disease as defined by Ohio Revised Code 4123.01 to 4123.99."

Essentially, Siemens contends that Pierce failed to present evidence that overuse syndrome meets two of the three elements required by the statutory definition of a "nonscheduled occupational disease" under R.C. 4123.68. Specifically, Siemens contends that Pierce failed to present evidence that (a) overuse syndrome was peculiar to her own particular kind of employment by its causes and the characteristics of its manifestation or that the condition of her employment resulted in a hazard which distinguished her employment in character from employment generally, and (b) her employment created a risk of contracting overuse syndrome in a greater degree and in a different manner than the general public. Next, Siemens argues, because Pierce has not met her burden of proof, the jury verdict is contrary to law and against the manifest weight of the evidence.

Pierce contends that she presented ample evidence on these two statutory criteria to withstand the motions for directed verdict and that the judgment and jury verdict are supported by competent and credible evidence. We agree and affirm the judgment of the trial court.

The Ohio Supreme Court first interpreted the statutory criteria defining whether a nonscheduled occupational disease is compensable under R.C. 4123.68 in *State ex rel. Ohio Bell Tel. Co. v. Krise* (1975), 42 Ohio St.2d 247, 71 O.O.2d 226, 327 N.E.2d 756, syllabus (interpreting predecessor to current statute):

"An occupational disease is compensable under R.C. 4123.68(BB) where the following criteria exist: (1) the disease is contracted in the course of employment; (2) the disease is peculiar to the claimant's employment by its causes and the characteristics of its manifestation or the conditions of the employment result in a hazard which distinguishes the employment in character from employment generally; and (3) the employment creates a risk of contracting the disease in a greater degree and in a different manner than in the public generally."

We note that Siemens is not disputing the first criterion, that Pierce contracted the disease in the course of her employment.

■ Moreover, the court in *Bedford Hts. v. France* (1993), 67 Ohio St.3d 55, 58, 616 N.E.2d 177, 179–180, has held that reviewing courts must keep in mind the requirement of R.C. 4123.95 to construe the workers' compensation statutes liberally in favor of employees. Thus, when reviewing the record to determine

whether the claimant's evidence can withstand a motion for directed verdict, the appellate court must view any evidence presented on the statutory criteria in R.C. 4123.68 in a light favorable to the claimant.

■ A motion for a directed verdict presents the trial court with a question of law: Has the nonmovant supported the elements of her claim with any evidence of substantial probative value? *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 23 O.O.3d 115, 430 N.E.2d 935, paragraph one of the syllabus. Under Civ.R. 50(A), the trial court must construe the evidence most strongly in favor of the nonmovant and must determine whether reasonable minds could come to different conclusions.

■ This test requires the trial court to review and consider the materiality of evidence without weighing the evidence or considering the credibility of the witnesses. *Id.* at 68–69, 23 O.O.3d at 116–117, 430 N.E.2d at 937–938. If the nonmovant has presented evidence, which, in its most favorable light, would allow reasonable minds to come to different conclusions, the trial court must deny the motion. *Wells v. Miami Valley Hosp.* (1993), 90 Ohio App.3d 840, 848, 631 N.E.2d 642, 647, citing *Osler v. Lorain* (1986), 28 Ohio St.3d 345, 347, 28 OBR 410, 411–412, 504 N.E.2d 19, 21–22; see, also, *Ryne v. Garvey* (1993), 87 Ohio App.3d 145, 152, 621 N.E.2d 1320, 1324–1325. If the reviewing court finds that the nonmovant has presented evidence on all elements essential to establish her cause of action, the reviewing court must affirm the trial court's denial of a motion for directed verdict. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 285, 21 O.O.3d 177, 179, 423 N.E.2d 467, 469–470.

With respect to the case before us, the question is whether Pierce presented evidence on the essential elements of her claim. If we determine that Pierce produced evidence on the elements of her claim, we must affirm the trial court's judgment.

A

■ Under the second criterion, a claimant must present evidence from which a jury could infer that the occupational disease was peculiar to her own particular kind of employment. *Patterson v. Connor* (1984), 19 Ohio App.3d 304, 19 OBR 476, 484 N.E.2d 240, syllabus, citing *Krise, supra.* The analysis in *Patterson* focusses on the claimant's actual job activities rather than on a generic job of a similar nature. Thus, the question is not whether all or most people employed in a similar job would succumb to a given occupational disease. Rather, the question is whether the claimant has presented evidence that the disease is peculiar to her job either by (a) the causes of the disease and the characteristics of the disease's manifestation *or* (b) the condition of her employment. The

claimant's evidence on either of these prongs must show that the peculiar causes and characteristics or her working condition resulted in a hazard which distinguished her job from other jobs in general. In other words, as the court in *Patterson* reasoned, "the emphasis * * * [is] whether the claimant, in his own particular daily activities, [is] more apt than the general public to become so afflicted." *Patterson, supra,* 19 Ohio App.3d at 306, 19 OBR at 478–479, 484 N.E.2d at 242.

In the case before us, Siemens argues that, as explained by Pierce's medical experts, the definition of "overuse syndrome" does not meet the statutory definition of a compensable nonscheduled occupational disease because overuse syndrome can be applied to nonoccupational activities that involve repetitive movements as well as to other jobs in different work settings. We disagree and conclude that Siemens's argument is without merit.

■ As interpreted in *Krise* and *Patterson,* the second criterion requires the claimant to present evidence from which the fact finder can infer a causal link between her particular job and her claimed disease. Upon review of the entire record, we conclude that Pierce presented evidence on the second criterion. Pierce testified in detail about her particular job, her various work assignments, the repetitive movements she performed several hundred times an hour while holding a screwdriver or Allen wrench, and the physical problems she developed in her right hand, arm, neck, and shoulder. She testified that the jobs requiring her to hold and manipulate a screwdriver during her entire shift would cause her more pain than when she packed parts all day. When asked what she believed the cause of her problems was, she responded:

"A. I think it's from sitting in the same position all day pushing and pulling on parts and doing the same thing, constantly twisting like a screwdriver and stuff like that and doing it every day.

"Q. How often would you use a screwdriver in the performance of your job activities?

"A. Depending on what job I was running if it was E-frame, I used it all day long. If it was the smaller fuse clips, I would run that with a screwdriver all day. And if I run that job on that table there, it would consist of an [A]llen wrench to loosen the screw to set that one part down in there, and I think it was just like holding my fist in this position twisting and stuff."

Furthermore, Pierce testified that when she was laid off, her symptoms would lessen.

In addition, both medical experts testified that, in their opinions, the physical condition they diagnosed was peculiar to Pierce's employment by the causes and characteristics of the disease's manifestation or by the condition of her employ-

ment, which resulted in a hazard distinguishing her employment in character from employment generally. Further, Dr. Hussman testified that he believed that "there was a relationship to her task at work and her pains."

Given Pierce's testimony regarding the repetitive movements required by her particular job and the expert testimony, and given the requirement of R.C. 4123.95, we conclude that Pierce presented evidence on the second criterion.

## B

■ Under the third criterion, the claimant must present evidence from which a jury could infer that the claimant's employment created a risk of contracting the occupational disease in a greater degree and in a different manner than the general public. *Krise, supra,* syllabus. In other words, the claimant must show that her risk of contracting the occupational disease, because of her particular job, exceeded the risk to which the general public or other employees in general were exposed or normally subjected. *State ex rel. Republic Steel Corp. v. Indus. Comm.* (1980), 61 Ohio St.2d 193, 196, 15 O.O.3d 216, 218, 399 N.E.2d 1268, 1269–1270.

■ In the case before us, Siemens uses the same argument to dispute Pierce's evidence on the third criterion as it used on the second criterion, that the definition of "overuse syndrome" does not meet the statutory definition of a "compensable nonscheduled occupational disease" because overuse syndrome can also be applied to nonoccupational activities that involve repetitive movements as well as to other jobs in different work settings. We find that Pierce has presented evidence on the third criterion and conclude that Siemens's assignments of error relating to the trial court's denial of its motions for directed verdict are without merit.

In *Republic Steel,* the court reviewed the claimant's evidence, the medical evidence, and an affidavit from a coworker of the claimant and found that the description of the working conditions established that the claimant was exposed to various hazardous dusts and fumes, which, "by virtue of his special duties as a carpenter, clearly exceeded [the risk] to which the public, and employees in general, are normally subjected." *Republic Steel, supra,* 61 Ohio St.2d at 196, 15 O.O.3d at 218, 399 N.E.2d at 1270. Because the court found "that there was some evidence to support the Industrial Commission's finding [that the claimant was suffering from an occupational disease] and that all the criteria established by *Ohio Bell Telephone v. Krise, supra,* were satisfied," the court affirmed the judgment of the court of appeals. *Id.*

In the case before us, Pierce testified that the repetitive movements she performed on her job were not only peculiar to her different jobs assignments,

but that she did not perform such repetitive movements in her leisure activities to the same degree or for the same extended length of time. Further, both doctors testified that Pierce had a greater risk of contracting overuse syndrome, by virtue of her job, than the general public or than other employees in general. Dr. Moore's testimony included these statements:

"Q. Doctor, in your opinion, * * * in terms of reasonable chiropractic probabilities, did Mrs. Pierce's occupation cause her to have a greater risk of contracting these conditions that you've diagnosed than the public in general?

"A. Yes.

"Q. And what's the basis for your opinion on that?

"A. As I previously explained it, not everyone has a job where they continually do one thing all day long or sit in one position all day long. This is what you would find with somebody with this kind of work."

On cross-examination, regarding the repetitive movements, counsel for Siemens asked and Dr. Moore responded:

"Q. With regard to the general public, isn't it just as likely that members of the general public could get these same kind[s] of problems or these same kind[s] of problems could develop on the basis of repetitive motion that is not connected with work? * * * such as knitting, sewing, sports, all that kind of thing. * * *

"A. Well, normally the general public wouldn't sit and do one thing for eight hours at a time.

"Q. But if a member of the general public did, in fact, sit and sew for that period of time, would it be just as likely that that member of the general public could develop these same kind[s] of problems?

"A. Probably not because they'd probably quit doing it before it developed into that kind of a problem."

Likewise, Dr. Hussman testified that in his medical opinion, based on his evaluation of Pierce and what she had told him about her job, he "believe[d] that the fact that she does those repetitive motions at work would predispose her for this more than the general public."

Given Pierce's testimony regarding the repetitive movements required by her job, the expert testimony that her job created a higher risk of contracting overuse syndrome than the general public or general employee, and the requirement of R.C. 4123.95 to construe the workers' compensation statutes liberally, we conclude that Pierce presented evidence relating to the third criterion. Because we find that Pierce presented evidence on the second and third criteria to show a compensable nonscheduled occupational disease, we conclude that the trial court properly denied Siemens's motions for directed verdict.

## III

■ With respect to Siemens's final assignment of error, whether the jury verdict is contrary to law for the reason that the occupational disease allowed by the jury, "overuse syndrome," is not an "occupational disease" as defined by R.C. 4123.01 through 4123.99, we overrule this assignment of error and affirm the decision of the trial court.

■ In considering whether the judgment of the trial court is against the manifest weight of the evidence, the reviewing court is guided by the presumption that the findings of the trier of fact are correct. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410–411, 461 N.E.2d 1273, 1276. Further, the reviewing court is not to substitute its judgment for that of the trial court when the judgment is supported by competent and credible evidence on the required elements of the plaintiff's case. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

We have concluded that Pierce presented competent and credible evidence on the second and third criteria under R.C. 4123.68 and under the *Krise* standard to withstand Siemens's motions for directed verdict. We further conclude that in view of that evidence, the judgment of the trial court is not against the manifest weight of the evidence, nor is it contrary to law. Accordingly, Siemens's assignments of error are overruled.

## IV

In conclusion, we find that Pierce presented sufficient evidence, as required under R.C. 4123.68, of a compensable nonscheduled occupational disease to withstand motions for directed verdict. We further find that the judgment is not against the manifest weight of the evidence. Accordingly, all of Siemens's assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

WOLFF and FREDERICK N. YOUNG, JJ., concur.