HOWELL, Appellee,

v.

DAYTON POWER & LIGHT COMPANY, Appellant, et al.

[Cite as *Howell v. Dayton Power & Light Co.* (1995), 102 Ohio App.3d 6.]

Court of Appeals of Ohio,
Fourth District, Adams County.

No. 94CA573.

Decided March 21, 1995.

8

*Clements, Mahin & Cohen* and *William E. Clements*, for appellee Larry Howell.

*Dunlevey, Mahan & Furry* and *Gary T. Brinsfield*, for appellant.

*Betty Montgomery*, Attorney General, and *Diana K. Bond*, Assistant Attorney General, for appellees J. Wesley Trimble et al.

HARSHA, Judge.

This appeal arises from a jury verdict in favor of plaintiff-appellee Larry K. Howell allowing him to recover workers' compensation benefits for loss of vision in his right eye. The record reveals the following facts.

On October 20, 1989, appellee Howell experienced sudden visual problems in his right eye. He went to see Jack Hollins, an M.D. and expert in retinal ophthalmology from Louisville, Kentucky, who diagnosed appellee as suffering from ocular histoplasmosis. Histoplasmosis is a disease caused by a fungus which is endemic to certain areas of the United States, including the Ohio River Valley. The fungus especially thrives in soil which contains fecal matter from birds.

Appellee eventually applied for workers' compensation benefits, but his employer, appellant Dayton Power & Light Company ("DP & L"), challenged his application, claiming that there was no evidence that his visual problems were related to his employment. A jury trial on February 2 and 3, 1994, resulted in a verdict in favor of Howell.

As several of the assignments of error raised by DP & L involve the evidence offered at trial, we will briefly summarize some of the relevant testimony admitted in this case. Howell testified that he had been employed at DP & L since 1979, when he was hired as a coal handler C operator. As a coal C operator, Howell used brooms, vacuums, and hoses to clean beltways used to transport coal. Howell also testified that during this time, DP & L was undergoing construction and landscaping, which caused the soil and ground to be exposed. In 1983, Howell was promoted to a B operator, which involved the same duties as a C operator with the additional responsibility of using bulldozers and scrapers.

Several witnesses, including Howell, also testified regarding DP & L's problems with pigeons and bird infestations. Over the years of Howell's employment, DP & L hired professional exterminators to rid the compound of pigeons, but

without success. Witnesses testified that DP & L also fired cannons to attempt to scare the birds away, used poison, and provided ammunition to their employees who owned guns so they could shoot the pigeons. Despite these efforts, DP & L was unable to control the pigeon population, and one worker testified that at times it was difficult to determine the color of machinery due to the amount of bird droppings that had fallen on the equipment.

Howell also presented the testimony of two expert witnesses. Dr. Jack Hollins, an expert in retinal ophthalmology, testified that, to a reasonable degree of medical probability, Howell suffered from ocular histoplasmosis syndrome. As a result, appellee had 20/200 vision in his infected eye. Hollins also stated that he was not an expert in the environmental causes of histoplasmosis illnesses, and that to determine if Howell's problems were work-related, an expert in occupational medicine should be consulted.

Howell then presented the testimony of Dr. Lockey, an expert in occupational medicine and exposure. Lockey testified that within a reasonable degree of medical probability, appellee acquired histoplasmosis from his work at DP & L. Lockey based his opinion on x-rays taken of appellee before and after he started his employment at DP & L, which showed no signs of histoplasmosis infection prior to his work at DP & L, but did several years later. Lockey also based his opinion on the testimony regarding the nature of Howell's job, the trouble DP & L had with pigeons, and the fact that histoplasmosis is endemic to the Ohio River Valley areas where the DP & L plant was located.

Both doctors also testified that histoplasmosis infection is commonly found in people throughout other areas of the United States. Further, both testified that Howell's reaction to the infection was highly unusual, and that in over ninety-nine percent of the cases, people infected with histoplasmosis develop only minor flu-like symptoms that shortly disappear.

On February 3, 1994, the jury returned a verdict in favor of Howell, allowing him to participate in the Ohio workers' compensation system. DP & L then filed this timely appeal.

DP & L first assignment of error states:

"I. The trial court erred to the prejudice of appellant by not admitting testimony regarding appellee's substantial drug and alcohol use."

DP & L cross-examined both expert witnesses during depositions regarding the effects of drugs and alcohol on one's immune system. DP & L then attempted to offer evidence regarding Howell's prior drug and alcohol use to show that Howell's severe reaction to histoplasmosis was caused by a weakened immune system. DP & L now argues that the trial court erred by excluding all reference to Howell's prior drug and alcohol problems.

Concerning the effects of drugs and alcohol on one's immune system, Hollins testified:

"Q. Okay. But if someone intentionally harms their own immune system could that possibly lead to the fact that they would have, be more likely to contract it?

"MR. CLEMENTS: Objection.

"A. I would think so.

" * * *

"Q. Now if Mr. Howell, for some reason, has an immune system that is not as effective as others, might that cause the more severe problem?

"MR. CLEMENTS: Objection.

"A. Certainly could.

"Q. Okay. Do you know whether or not smoking effects your immune system?

"MR. CLEMENTS: Objection, you may answer.

"A. I don't know.

"Q. What about the use of cocaine?

"MR. CLEMENTS: Objection.

"A. Again, I don't know.

"Q. Okay. Marijuana?

"MR. CLEMENTS: Objection.

"A. Just don't know the answer to that. I would assume it decreases it but I don't know.

"MR. BRINSFIELD: Okay, I don't have any other questions then."

Lockey also responded to questions regarding drug and alcohol use:

"Q. Now what types of things affect an individual's immune system; for example, does alcohol?

"A. Alcohol can, yes.

"Q. What about cocaine?

"A. Yes.

"MR. CLEMENTS: Objection.

"Q. What about marijuana?

"MR. CLEMENTS: Objection.

"A. It can for certain individuals.

"Q. What about smoking—?

"MR. CLEMENTS: Objection.

"Q. —regular cigarettes?

"A. It can."

 We first note that a trial court's decision regarding the admissibility of evidence will not be reversed unless the trial court abused its discretion. *Peters v. Ohio State Lottery Comm.* (1992), 63 Ohio St.3d 296, 587 N.E.2d 290. An abuse of discretion connotes more than an error of judgment; it connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary. *Franklin Cty. Sheriff's Dept. v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 498, 506, 589 N.E.2d 24, 30–31.

At trial, appellant DP & L wanted to argue that appellee Howell's infection was caused by the fact that appellee had damaged his immune system, and therefore his employment with DP & L did not increase his risk of contracting histoplasmosis. We believe the trial court correctly excluded the evidence regarding appellee's prior drug and alcohol use.

 Expert testimony regarding causation is admissible only if the expert states that a certain event was the probable cause of an occurrence, *i.e.*, that there is a greater than fifty percent likelihood that an event produced the occurrence at issue. See *Stinson v. England* (1994), 69 Ohio St.3d 451, 633 N.E.2d 532; *Cooper v. Sisters of Charity of Cincinnati, Inc.* (1971), 27 Ohio St.2d 242, 56 O.O.2d 146, 272 N.E.2d 97. "Consequently, expert opinion regarding a causative event, including alternative causes, must be expressed in terms of probability irrespective of whether the proponent of the evidence bears the burden of persuasion with respect to the issue." *Stinson, supra*, at paragraph one of the syllabus.

 In this case, neither expert testified that appellee's prior drug and alcohol use was the probable cause for either appellee's contracting histoplasmosis or for the severity of appellee's reaction. In fact, neither Hollins nor Lockey was ever asked for his opinion within a reasonable degree of medical certainty or probability on these issues. As a result, any reference to appellee's prior drug and alcohol problem was properly excluded as irrelevant. We therefore overrule appellant's first assignment of error.

Appellant's second and third assignments of error state:

"II. The trial court erred to the prejudice of appellant by not granting its motion for directed verdict.

"III. The trial court erred to the prejudice of appellant by not granting its motion for a judgment notwithstanding the verdict."

██ We apply the same test when reviewing a motion for a directed verdict and a motion for a judgment notwithstanding the verdict. *Pariseau v. Wedge Products, Inc.* (1988), 36 Ohio St.3d 124, 127, 522 N.E.2d 511, 514–515. Thus, we will consider appellant's second and third assignments of error together.

The standard for granting a directed verdict is set forth in Civ.R. 50(A)(4), which provides:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

██ A motion for directed verdict tests the legal sufficiency of the evidence, and therefore presents a question of law, even though in deciding such a motion it is necessary to review and consider the evidence. *Grau v. Kleinschmidt* (1987), 31 Ohio St.3d 84, 90, 31 OBR 250, 255, 509 N.E.2d 399, 404–405; *Eldridge v. Firestone Tire & Rubber Co.* (1985), 24 Ohio App.3d 94, 24 OBR 164, 493 N.E.2d 293. Accordingly, we make an independent review. When considering a motion for a directed verdict, a court must construe the evidence most strongly in favor of the party against whom the motion is directed. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 284, 21 O.O.3d 177, 178–179, 423 N.E.2d 467, 469. Where there is substantial competent evidence favoring the nonmoving party so that reasonable minds might reach different conclusions, the motion must be denied. *Ramage v. Cent. Ohio Emergency Serv., Inc.* (1992), 64 Ohio St.3d 97, 109, 592 N.E.2d 828, 837.

R.C. 4123.68 specifically states that an employee who is disabled because of contracting an occupational disease may recover workers' compensation. R.C. 4123.68. An "occupational disease" is defined as "a disease contracted in the course of employment, which by its causes and the characteristics of its manifestation or the condition of the employment results in a hazard which distinguishes the employment in character from employment generally, and the employment creates a risk of contracting the disease in greater degree and in a different manner from the public in general." R.C. 4123.01(F) (formerly R.C. 4123.68).

Thus, in order to participate in Ohio's workers' compensation system, a claimant must show (1) that the disease was contracted in the course of employment, (2) that the nature of the claimant's work created an increased hazard of contracting the disease different than employment generally, and (3)

that the employment created a risk of contracting the disease in a greater degree and in a different manner than the general public. R.C. 4123.01(F): *Hutchinson v. Ohio Ferro Alloys Corp.* (1994), 70 Ohio St.3d 50, 636 N.E.2d 316; *Miller v. Barry* (1992), 81 Ohio App.3d 393, 611 N.E.2d 357.

At trial, Hollins testified that to a reasonable degree of medical certainty, appellee suffered from ocular histoplasmosis. Lockey then testified that appellee contracted histoplasmosis between 1979 and 1983 during the course of his employment at DP & L. Lockey also testified that jobs which entail exposure to soil, *i.e.*, those where people operate heavy machinery, are at an increased risk to acquire the disease. Lockey then stated, based upon appellee's job tasks, the location of the plant site, and DP & L's bird problem, that to a reasonable degree of medical probability, appellee had a greater risk than those in the public for contracting histoplasmosis. Appellee, as noted earlier, presented the testimony of other witnesses regarding exposure to uncovered soil and the pigeon infestation at DP & L.

We believe the above testimony easily establishes substantial competent evidence from which reasonable minds could find that appellee met all the criteria to prove an occupational disease. As a result, we overrule appellant's second and third assignments of error.

Appellant's fourth assignment of error states:

"IV. The verdict of the jury was not sustained by the weight of the evidence, but rather was based on passion and prejudice."

Appellant next contends that the jury's factual determinations were not supported by the weight of the evidence, but were instead the result of passion and prejudice.

A reviewing court may not reverse a judgment as being against the weight of the evidence as long as it is supported by some competent, credible evidence. *State ex rel. Pizza v. Strope* (1990), 54 Ohio St.3d 41, 560 N.E.2d 765. Weighing conflicting evidence and resolving issues of credibility are generally left to the jurors, who are in a better position to observe the demeanor, gestures, and voice inflections of the witnesses at trial. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273.

We believe that the previously mentioned evidence adduced at trial constitutes competent, credible evidence to support the jury's verdict. The testimony of the expert witnesses regarding causation and the testimony of the employees were sufficient to support the jury's verdict. Further, there is no evidence in the record to support the notion that the verdict was the result of passion or prejudice. The trial judge specifically told the jury that their decision

was not to be based on sympathy. As a result, we overrule appellant's fourth assignment of error.

Appellant's fifth and sixth assignments of error state:

"V. The trial court erred to the prejudice of appellant by granting appellee's motion for protective order and limiting appellant to experts within the state of Ohio.

"VI. The trial court's order limiting appellant to experts within the state of Ohio denied appellant equal protection and due process."

Appellant alleges that the trial court committed reversible error by granting a protective order, which limited appellant to conducting medical examinations of the claimant in Ohio.

██ During discovery, DP & L wished to have appellee examined by its own medical experts. It chose two experts, one located in Minneapolis, Minnesota, and the other located in Portland, Oregon, whom they characterized as the foremost experts in their field. In response, appellee requested a protective order so the claimant would not have to travel to these locations for medical examinations. The trial court granted the motion and issued an order allowing appellant to conduct two medical examinations within Ohio.

██ Civ.R. 26(C), which specifically gives the trial court the power to grant protective orders regarding discovery, states:

"Protective Orders. Upon motion by any party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending may make any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery * * *."

The use of the term "may" in the rule gives the trial judge discretion regarding the nature of protective orders. See *Levy v. Univ. of Cincinnati* (1992), 84 Ohio App.3d 342, 616 N.E.2d 1132.

The trial judge, after considering the arguments presented by both sides, concluded that appellant should be given the opportunity to perform two medical examinations within Ohio. We cannot say this decision was unreasonable, unconscionable, or arbitrary. The judge considered the time and inconvenience

that flying to Minnesota and Oregon would have on the claimant, and weighed it against the needs of appellant. We also note that nothing in the judge's decision prevented appellant from flying these or other experts into Ohio to conduct the examination.[1] We thus overrule appellant's fifth assignment of error.

Appellant's sixth assignment of error alleges that the protective order violated the Equal Protection Clause. Appellant argues that by limiting DP & L to experts in Ohio, while allowing appellee to use an expert from Lexington, Kentucky, the trial judge treated the parties differently without a rational basis. We disagree.

As noted previously, the trial court's order did not limit appellant to experts in Ohio. The court simply protected the claimant from the expense and inconvenience of flying out-of-state for medical examinations. Appellant asserts that the order was equivalent to precluding the use of out-of-state experts, because of expenses involved in compensating such experts for their time. However, the trial court cannot be held responsible for the fees charged by expert witnesses. As a result, we do not believe the record shows that appellant was treated unequally. As a result, we overrule appellant's sixth assignment of error.

Accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed.*

GREY and PETER B. ABELE, JJ., concur.

LAWRENCE GREY, J., retired, of the Fourth Appellate District, sitting by assignment.

---

1. There is no evidence in the record which establishes that these individuals were the only two experts in the country available to the appellant, notwithstanding their characterization as being "foremost" in their field.