WHITE, Appellee,

v.

CENTER MANUFACTURING COMPANY, Appellant, et al.

[Cite as *White v. Center Mfg. Co.* (1998), 126 Ohio App.3d 715.]

Court of Appeals of Ohio,
Sixth District, Huron County.

No. H–97–015.

Decided March 20, 1998.

716

718

*Melissa L. Eaton and Robert Zelvy,* for appellee.

*Corrine S. Carman,* for appellant.

MELVIN L. RESNICK, Judge.

This is an appeal from a judgment of the Huron County Court of Common Pleas wherein a jury determined that appellee, Kenneth Ray White, was entitled to participate in the Ohio Workers' Compensation Fund. Appellant, Center Manufacturing Company, appeals and asserts the following assignments of error:

"1. The trial court committed prejudicial error by excluding evidence of prior misconduct which is probative of the truthfulness of the plaintiff.

"2. The trial court erred in denying appellant's, motion for judgment notwithstanding the verdict where no competent, credible evidence was presented:

"a. That any of appellee Ray White's diseases were contracted in the course of his employment with Center Manufacturing, and;

"b. That appellee's diseases by their causes and the characteristics of their manifestation, or the condition of his employment resulted in a *hazard* which distinguishes the employment in character from employment generally, and;

"c. That appellee's employment created a *risk* of contracting his diseases in a greater degree and different manner from the public in general, as required by Ohio Rev.Code § 4123.01(F)."

"3. The trial court erred in denying appellant's motion for a new trial where the verdict was against the manifest weight of the evidence, the judgment was contrary to law, error of law occurred at trial, and manifest injustice was done."

On August 3, 1994, White filed an application for benefits under the Ohio Workers' Compensation Act, alleging that chemical agents in Center Manufactur-

ing Company's finish department caused him to develop "allergic rhinitis compli-cated by Eustachian Tube dysfunction and secondary otitis media, hyper-reactive airway disease (asthma)." Appellee listed the date of exposure as June 12, 1993. White's claim was disallowed by the Ohio Bureau of Workers' Compensation and the Ohio Industrial Commission. Appellee then filed an appeal in the common pleas court. In a trial *de novo* to a jury, the following pertinent evidence was adduced.

Center Manufacturing Company ("Center") produces fireproof safes for resi-dential and commercial use. White was hired by Center in January 1976, when he was approximately twenty years old.

For the first year of his employment, White worked in the paint or finish department where safes were "blasted" to remove excess concrete and dirt, dipped in solvent to remove pits, and painted. Although the finish department is not separated from the rest of the factory by walls, it is undisputed that the work performed in that area creates a large amount of cement and silica dust and involves using various solvents, as well as paint. In painting and/or top coating the safes, "paint booths" are employed to gather and draw away excess sprayed paint. The combination of paint, water, and chemicals used to keep the paint from bonding eventually clogs the drains in the "booths" and build up as a sludge-like material. Using shovels, workers are required to clean the sludge out of the booths with shovels and off the walls on a regular basis.

After his first year of employment, White worked in various other areas of the Center plant; however, during "layoff" periods, he worked in the finish depart-ment. For approximately seventeen years, the estimated amount of time spent by White in the finish department was two to five months per year in periods of two to three months at a time.

White's testimony disclosed that, as a child, he suffered from frequent ear-aches. When he was about eight years old, his mother informed him that he was allergic to, among other things, feathers, house dust, and animal hair. White stated that his tonsils were removed when he was eight and, subsequently, all of his symptoms disappeared.

White testified, however, that a few years after he began working at Center, he began experiencing "constant" ear infections, bloody noses, diarrhea, and short-ness of breath. On June 12, 1993, appellee worked in the finish department, cleaning the paint booths and suffered some breathing problems. White stated that he did not connect his ear infections, rhinitis or hyperreactive airways disease to the conditions at work until May 1994. After May 1994, and upon his doctor's request, White no longer worked in the finish department. He claimed that all of his physical symptoms disappeared (excepting one incident in 1995 when he worked on a company clean-up crew and was exposed to dust).

After several years of treatment with his family physician, White was referred to Kahlid Mahmood, M.D., a specialist in ear, nose, and throat diseases (otolaryngologist).

In his testimony, Dr. Mahmood revealed that he first examined White on June 17, 1988, and diagnosed him as having a middle ear infection (otitis media). Further testing showed immobile ear drums, indicating an infection of the middle ear and blocking of appellee's eustachian tubes. The doctor inserted ear tubes into appellee's ears to permit drainage. After his condition improved, White had a hearing test that showed a left ear hearing loss and retracted ear drums in both ears. Dr. Mahmood testified that such middle ear infections in adults are unusual.

Dr. Mahmood continued to treat appellee for ear infections over the next several years. In 1993, the doctor surgically repaired a perforation in White's right eardrum caused by an ear infection. During that surgery, Dr. Mahmood noted that one of the small bones in the middle ear that transmit sound was being destroyed, a symptom the doctor also attributed to chronic ear infections. Dr. Mahmood diagnosed appellee as having "chronic otitis media, secondary to eustachian tube dysfunction" and "chronic allergic and vasomotor rhinitis, which is inflammation of the sinus cavities as a result of irritation."

When posed with a hypothetical question assuming the facts in evidence, Dr. Mahmood stated, to a reasonable degree of probability: "My opinion is that his [White's] persistent and recurrent ear problem was connected to exposure at his place of work." He further opined that appellee's risks for rhinitis, repeated ear infections, and eustachian tube obstruction were greater than the risks at other jobs generally. Although, on direct examination, he never provided an opinion linking conditions of White's employment to the development of rhinitis, Dr. Mahmood testified on cross-examination that the sinus problem and the middle ear problem, as far as a disease itself is concerned, "are pretty well one and the same thing."

After examining appellee, Dr. Mahmood referred him to an allergist, James B. Sauers, M.D. Dr. Sauers conducted an allergy test and determined that White was allergic to house dust. Dr. Sauers, in discussing "allergic rhinitis," indicated that not only dust but also hydrocarbons or solvents could trigger the symptoms of the disease. He explained that there are "chemical items which can cause the release of chemical mediators that give the symptoms without going through this antigen, antibody, physiologic response that we classically identify as allergic." The doctor concluded that rhinitis could be caused by chronic exposure to environmental irritants. When asked about the cause of White's rhinitis, the doctor replied:

"I so believe his dust sensitivity is a major contributor to it, as well as airborne particulate irritants may very well play a role that we are suspicious of, but we don't have a documentation of that, other than occasional episodes of being exposed to the particulate industrial dust in his employment."

When asked to provide his opinion, to a reasonable degree of medical probability, as to the cause of appellee's hyperreactive airway disease, or asthma, the doctor stated that "there was a role of environmental contributors to this, and pinpointing the history towards the paint environment has to be strongly recognized."

Two of appellee's co-workers also testified at trial. Russell Bishop described the finish department as very dusty due to the cement dust and stated that employees were "full of paint" when they worked in that department. He further testified that he had seen appellee coughing and exhibiting other flu-like symptoms when White worked in the finish department. Richard A. Doughty also worked in the finish department; he characterized the area as full of concrete dust. He stated that the paint from the safes "comes out into the air" and depicted himself as covered with paint after a day of work. Doughty stated that when the safes are sprayed for the topcoat, "[Y]ou can taste the paint in the air and feel it in your lungs."

The jury found, and judgment was entered thereon, that appellee was entitled to participate in the Workers' Compensation Fund for three occupational diseases: allergic rhinitis, eustachian tube dysfunction with otitis media, and hyperreactive airways disease.

█ Appellant's first assignment of error contends that the trial court abused its discretion in granting appellee's pretrial motion *in limine*.

Prior to trial, appellee asked the court to preclude any evidence related to White's alleged theft of a safe in April 1976. The trial court granted this motion, noting that appellant could raise the issue again at trial. Nonetheless, appellant never sought to introduce the evidence that was the subject of the motion *in limine* at any point during trial.

█ An appellate court does not directly review the rulings on motions *in limine*. A pretrial ruling on such a motion is a preliminary precautionary ruling by a court in anticipation of its ruling on evidentiary issues at trial. *State v. Grubb* (1986), 28 Ohio St.3d 199, 201–202, 28 OBR 285, 287–289, 503 N.E.2d 142, 145–146; *McCabe/Marra Co. v. Dover* (1995), 100 Ohio App.3d 139, 160, 652 N.E.2d 236, 249–250. A court's initial denial of a motion *in limine* does not preserve any error for review. *State v. Hill* (1996), 75 Ohio St.3d 195, 202–203, 661 N.E.2d 1068, 1077–1078. Thus, the evidence at issue must be presented at trial, and a proper proffer made, in order to preserve the error for appeal. *State*

*v. Grubb,* 28 Ohio St.3d at 201, 28 OBR at 287–288, 503 N.E.2d at 145. By failing to raise the issues advanced in the motion *in limine,* the objecting party waives the right to raise those issues on appeal. *Id.* Accordingly, by failing to raise appellee's alleged prior theft at the appropriate time during trial, appellant failed to preserve error, if any, for our review. Therefore, appellant's first assignment of error is found not well taken.

In its second assignment of error, Center maintains that the trial court erred in failing to grant its post-trial motion for judgment notwithstanding the verdict.

The standard of review for a Civ.R. 50(B) motion for judgment notwithstanding the verdict is the same as that for a motion for a directed verdict. The question presented is one of law, and, therefore, review of the motion does not entail a weighing of the evidence or an assessment of the credibility of the witnesses. *Osler v. Lorain* (1986), 28 Ohio St.3d 345, 28 OBR 410, 504 N.E.2d 19. The evidence adduced at trial and the facts established by admissions in the pleadings and in the record are construed most strongly in favor of the party against whom the motion is made, and where reasonable minds could, upon this evidence, reach different conclusions, the motion must be denied. *Posin v. A.B.C. Motor Court Hotel, Inc.* (1976), 45 Ohio St.2d 271, 275, 74 O.O.2d 427, 429–430, 344 N.E.2d 334, 338.

Appellant argues that appellee failed to offer substantial evidence upon which reasonable minds could reach differing conclusions on the elements required under R.C. 4123.68 and 4123.01(F).

An occupational disease claim for workers' compensation benefits can be made in either of two ways. An employee can demonstrate that he has contracted one of the so-called "scheduled diseases" listed in R.C. 4123.68. Alternatively, an employee may prove that he has an occupational disease if he satisfies the three elements set forth in R.C. 4123.01(F). These are (1) the disease was contracted in the course of employment, (2) the employment by its causes and the characteristics of its manifestation or the condition of the employment results in a hazard which distinguishes the employment in character from employment generally, and (3) the employment creates a greater risk of contracting the disease in greater degree and in a different manner from the public in general. R.C. 4123.01(F). See, also, *Hutchinson v. Ohio Ferro Alloys Corp.* (1994), 70 Ohio St.3d 50, 52, 636 N.E.2d 316, 317–318.

In the present case, appellee did not apply for benefits due to an alleged "scheduled disease." Therefore, this court must review the record to discern the existence of substantial evidence, upon which, when construed in a light most favorable to appellee, reasonable minds could reach different conclusions as to whether the statutory requisites were met.

### CONTRACTED WITHIN SCOPE OF EMPLOYMENT

■ Appellant first asserts that appellee's medical experts failed to establish that White's medical conditions were caused by the conditions of his place of employment.

■ "Proximate cause" is defined in the area of workers' compensation the same as it is defined in torts. *Aiken v. Indus. Comm.* (1944), 143 Ohio St. 113, 28 O.O. 50, 53 N.E.2d 1018. "Proximate cause" is a happening or event that as a natural and continuous sequence produces an injury without which the result would have not occurred. *Murphy v. Carrollton Mfg. Co.* (1991), 61 Ohio St.3d 585, 575 N.E.2d 828.

■ An expert testifying on the issue of proximate cause must state an opinion with respect to the causative event in terms of probability. *Stinson v. England* (1994), 69 Ohio St.3d 451, 633 N.E.2d 532, paragraph one of the syllabus. Nonetheless, no "magic words" are required. Rather, the expert's testimony, when considered in its entirety, must be equivalent to an expression of probability. See *Frye v. Weber & Sons Serv. Repair, Inc.* (Jan. 22, 1998), Cuyahoga App. Nos. 72164 and 72555, unreported.

Viewing the experts' testimony in the entirety, we find that their opinions with regard to the occupational diseases claimed by White were provided in such a manner as to be the equivalent of probability that these diseases were proximately caused by irritants in the workplace. Contrary to appellant's assertion, the testimony, when viewed in a light most favorable to appellee, reveals only that his house-dust allergy might render White more susceptible to, not that his allergy caused any of, these diseases. Therefore, appellant's first argument lacks merit.

■ Appellant next contends that the experts' opinions lacked any basis. This argument actually challenges the admissibility of the experts' opinions and shall, therefore, be reviewed under an abuse of discretion standard. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 524 N.E.2d 881. Abuse of discretion connotes "more than error of law or judgment, but implies an attitude on the part of the trial court that is unreasonable, arbitrary or unconscionable." *Ruwe v. Springfield Twp. Bd. of Trustees* (1987), 29 Ohio St.3d 59, 61, 29 OBR 441, 443, 505 N.E.2d 957, 959.

■ Prior to playing the videotapes of the testimony of Dr. Mahmood and Dr. Sauers, the trial court disposed of objections to portions of that testimony. During Dr. Mahmood's deposition, appellant voiced a motion to strike an answer to the hypothetical posed to the physician. Appellant did not object to the facts set forth in the hypothetical itself. However, at trial, Center did object to the assumed facts in the hypothetical that stated that appellee was exposed to

workplace irritants, including "aeromatic [sic] hydrocarbons, solvents, paint sludge, and silica dust." The trial court observed that all of these irritants were previously entered into evidence by means of testimony and could, therefore, be used as a basis for Dr. Mahmood's opinion.

Evid.R. 703 requires that opinion testimony by an expert witness be based upon facts within that witness's own personal knowledge *or* upon facts shown by the evidence. *Mahan v. Bethesda Hosp., Inc.* (1992), 84 Ohio App.3d 520, 525, 617 N.E.2d 714, 717–718. Here, as held by the trial court, the facts relied upon by Dr. Mahmood were admitted into evidence prior to the playing of his videotaped deposition. Therefore, the trial court did not abuse its discretion in determining that these facts could be used as a basis for the doctor's opinion.

A reading of appellant's objections to Dr. Sauer's testimony reveals that appellant never specifically objected to a lack of a basis for the doctor's opinion. Errors which are not brought to the attention of the trial court by objection are waived and may not be raised on appeal. *First Natl. Bank of Cincinnati v. Cianelli* (1991), 73 Ohio App.3d 781, 790, 598 N.E.2d 789, 795, citing *Stores Realty Co. v. Cleveland* (1975), 41 Ohio St.2d 41, 43, 70 O.O.2d 123, 124, 322 N.E.2d 629, 630–631. Center did cross-examine the doctor extensively about the basis, or lack thereof, of his opinion and raise the issue in its motion for a judgment notwithstanding the verdict. However, these were not the equivalent of timely objections.

For these reasons, appellant's contentions concerning the basis for the experts' opinions lacks merit.

## RISK

Appellant next contends that appellee failed to prove that his employment at Center created the risk[1] of allergic rhinitis, eustachian tube dysfunction with otitis media, and hyperreactive airways disease in a greater degree and in a different manner than the public generally. See *State ex rel. Ohio Bell Tel. Co. v. Krise* (1975), 42 Ohio St.2d 247, 71 O.O.2d 226, 327 N.E.2d 756, syllabus. While admitting that expert testimony is unnecessary to show this risk, appellant argues that the lay testimony of appellee's co-workers simply established that White had more exposure to dust and dirt than does the average person. Appellant, relying on *Burch v. Uniroyal Goodrich Tire Co.* (Dec. 1, 1993), Summit App. No. 16169, unreported, 1993 WL 498177, concludes that this is

---

1. "Risk" is the third prong of the definition set forth in R.C. 4123.01(F). Nonetheless, because appellant asks this court to review the "risk" prong before the "hazard" prong, we shall do so.

insufficient evidence to defeat a motion for a judgment notwithstanding the verdict.

To show risk of contracting an occupational disease because of his particular job, a claimant must demonstrate that the risk exceeded that to which members of the general public were exposed or normally subjected. *Pierce v. Trimble* (1995), 101 Ohio App.3d 690, 697, 656 N.E.2d 413, 417–418, citing *State ex rel. Republic Steel Corp. v. Indus. Comm.* (1980), 61 Ohio St.2d 193, 196, 15 O.O.3d 216, 218, 399 N.E.2d 1268, 1269–1270. Co-worker testimony related to the conditions of a particular job is admissible to satisfy both the hazard and risk prongs provided in R.C. 4123.01(F). *Miller v. Barry* (1992), 81 Ohio App.3d 393, 399, 611 N.E.2d 357, 361–362; *Prejean v. Euclid Bd. of Edn.* (1997), 119 Ohio App.3d 793, 696 N.E.2d 606; *Bayus v. Mayfield* (Jan. 27, 1992), Montgomery App. No. 12477, unreported, 1992 WL 10924.

In the case before us, White and his co-workers testified to conditions in the finish department that exceeded any "dust" or "dirt" to which the general public is subjected. These included concrete and silica dust, solvents, paint fumes, paint spray, and chemicals used to remove the pits from the outer surface of safes. In addition, there was some expert medical testimony on this issue. When Dr. Sauers was asked the degree of risk of developing hyperreactive airways disease and allergic rhinitis by the public in general, he stated: "Relatively low risk and probably not more than 10 or 15 percent likelihood." We therefore find that substantial evidence, upon which reasonable minds could reach different conclusions, was offered to show that appellee's work in the finish department presented a risk that exceeded the risk to which the general public is exposed or normally subjected.

Furthermore, we expressly reject the argument that *Burch* is "on point" with this case.

In *Burch*, the claimant, the widow of a mechanic exposed to "various dusts, including asbestos, soapstone and carbon black," sought death benefits from the Workers' Compensation Fund. She claimed that her husband's thirty-one-year exposure to these materials resulted in chronic obstructive pulmonary disease. The trial court granted the employer's motion for a directed verdict, and the Ninth District Court of Appeals affirmed that judgment.

The sole issue on appeal was whether the claimant produced sufficient evidence of risk of contracting pulmonary disease in a greater degree and different manner than the general public. The *Burch* court found that the claimant's medical experts failed to testify that the decedent's employment created such a risk. The court also appeared to consider the fact that the decedent was a "life-long" smoker and the fact that pulmonary disease is "prevalent in the general public."

While the decision of the *Burch* court does not reveal how the panel reached this last conclusion, *Burch* can be distinguished from this case because evidence was offered to show a risk different from that to which the general public is subjected.

We are also compelled to observe at this point that appellant, throughout the trial proceedings and in its appellate brief, portrays appellee's allergy to house dust as the cause of his diseases. Thus, appellant asserts that White's diseases were pre-existing conditions and appellee cannot recover, under R.C. Chapter 4123, for any aggravation of these diseases. There is no evidence in the record of this cause to support appellant's assertions. As noted by the trial court, one could infer from the evidence offered that the allergy might render appellee more susceptible to certain diseases, but it was not shown to be the cause of those diseases.

Accordingly, appellant's assertions on this issue are without merit.

### HAZARD

Appellant reiterates the allegation that lay testimony offered in this case was not substantial evidence showing that White's diseases are peculiar to his employment by its causes and that the characteristics of its manifestations or condition of employment resulted in a hazard which distinguishes the employment in character. *Krise, supra.*

Under this standard, the claimant need only establish that he or she, in his or her job activities, was more apt to contract the disease(s). *Miller v. Barry,* 81 Ohio App.3d at 399, 611 N.E.2d at 361–362. "The focus is on the claimant's actual job activities rather than a generic job of a similar nature." *Pierce v. Trimble,* 101 Ohio App.3d at 695, 656 N.E.2d at 416.

Here, substantial evidence of appellee's working conditions was offered by White and his co-workers showing that the conditions of that employment differed in character from other employment. White's testimony as well as that of Drs. Mahmood and Sauers presented evidence from which a jury could infer a causal link between working in the finish department and appellee's claimed diseases. That is, the testimony of these witnesses, when viewed in a light most favorable to appellee, revealed that White's symptoms abated when, after May 1994, he no longer performed any labor in the finish department. Consequently, we conclude that substantial evidence upon which reasonable minds could reach different conclusions was offered to prove that White, in his daily job activities, was more apt to contract allergic rhinitis complicated by eustachian tube dysfunction and secondary otitis media and hyperreactive airway disease.

For all of the foregoing reasons, appellant's second assignment of error is found not well taken.

In its third assignment of error, appellant maintains that the trial court erred in denying Center's motion for a new trial.

Motions for a new trial are governed by Civ.R. 59, which states in part:

"(A) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:

"* * *

"(6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence on the same case[.]

"(7) The judgment is contrary to law;

"* * *

"(9) Error of law occurring at the trial and brought to the attention of the trial court by the party making application."

■ Appellant first claims that the judgment in this case is not sustained by the weight of the evidence because (1) the testimony of appellee's medical experts is not credible, (2) appellee failed to reveal that he had a "history" of allergies to the doctors or discuss any work-related medical problems with his doctors, (3) the lay testimony was not credible, and (4) there was no foundation for the doctor's opinions.

■ The granting or denying of a motion for a new trial based on the sufficiency of the evidence is committed to the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Atkinson v. Internatl. Technegroup, Inc.* (1995), 106 Ohio App.3d 349, 357, 666 N.E.2d 257, 262–263. Absent clear evidence that the trial court acted unreasonably, unconscionably, or arbitrarily and rendered a decision which was clearly wrong and without legal basis, the trial court's decision must be affirmed. *Castlebrook, Ltd. v. Dayton Properties L.P.* (1992), 78 Ohio App.3d 340, 604 N.E.2d 808; *Scandinavian Health Spa v. Ohio Civ. Rights Comm.* (1990), 64 Ohio App.3d 480, 581 N.E.2d 1169.

■ In ruling on a motion for a new trial on the basis that the judgment is not sustained by sufficient evidence, the *trial court* must weigh the evidence and pass on the credibility of the witnesses, not in the substantially unlimited sense that such weight and credibility are passed on originally by the jury, but in a restricted sense of whether it appears to the trial court that manifest injustice has been done and that the verdict is against the manifest weight of the evidence. *Rohde v. Farmer* (1970), 23 Ohio St.2d 82, 52 O.O.2d 376, 262 N.E.2d 685,

paragraph three of the syllabus; *Atkinson v. Internatl. Technegroup, Inc.,* 106 Ohio App.3d at 358, 666 N.E.2d at 263–264.

After a careful examination of the record in this case, we find that the trial court did not abuse its discretion in its limited review of the evidence in this case. The issues raised by appellant do not demonstrate that manifest injustice was done or that the verdict was against the manifest weight of the evidence.

Appellant next contends that the judgment is contrary to law because appellee had a pre-existing nonoccupational disease that was aggravated by his employment and is therefore noncompensable under the Ohio Workers' Compensation Act. See *Brody v. Mihm* (1995), 72 Ohio St.3d 81, 647 N.E.2d 778.

As discussed previously, the testimony of the medical experts in its entirety, as well as the testimony of White, disclosed only that appellee had a house-dust allergy. The doctors did not say that this allergy caused appellee's diseases. While White had ear infections as a child, these infections disappeared after his tonsils were removed. While we agree, as appellant points out, that Dr. Sauers admitted that White's allergic rhinitis and breathing problems could have been aggravated by his working conditions, he could have also meant that the diseases caused by those conditions could also be worsened by the same conditions. Additionally, "aggravated" is a legal term of art in workers' compensation law and connotes the existence of a pre-existing disease. As stated on several occasions, the evidence at trial would not support a finding of a pre-existing disease, but, rather, a risk factor. Consequently, we find *Brody* inapplicable to this case.

Finally, appellant contends that the trial court's denial of its motion for a directed verdict at the close of appellee's case is an error of law. Appellant offers the same arguments in support of this contention as offered in support of its second assignment of error. Further, in that same assignment, we have already discussed the standard applicable to our review of a directed verdict and the facts relevant to the disposition of this assignment. We find no "error of law" in the court's denial of appellant's motion for a directed verdict.

Appellant's third assignment of error is found not well taken.

The judgment of the Huron County Court of Common Pleas is affirmed. Costs of this appeal are assessed to appellant.

*Judgment affirmed.*

HANDWORK, P.J., and KNEPPER, J., concur.