DECISION AND JUDGMENT ENTRY
Heather Jones appeals the judgment of the Ross County Court of Common Pleas, which granted a new trial after finding that it committed plain error. Huntington Local School District ("Huntington Local") cross-appeals the Ross County Court of Common Pleas's denial of a judgment notwithstanding the verdict. Jones argues that the trial court did not commit plain error by allowing her expert witness to testify about the offset theory of economics without objection by Huntington Local. We agree because we find that this is not one of the extremely rare cases with exceptional circumstances requiring a reversal of the jury's verdict. Huntington Local argues that we should not reverse and that the trial court should have granted a new trial because: (1) Jones failed to identify her expert witnesses in a timely manner; (2) the trial court gave improper jury instructions; and (3) Jones did not produce the expert witnesses' reports. We disagree because we find that the trial court did not abuse its discretion in failing to grant a new trial for these reasons.
In its cross-appeal, Huntington Local argues that the trial court erred by overruling its motion for judgment notwithstanding the verdict because Huntington Local is not a legal entity subject to suit. We disagree because we find, pursuant to R.C. Chapter 2477, that a school district is a political subdivision, which is a legal entity subject to suit.
Accordingly, we affirm the trial court's decision to deny Huntington Local's motion for a judgment notwithstanding the verdict and reverse the decision of the trial court granting a new trial.
 I.
Heather Jones suffered severe injuries to her right ankle when the car she was driving collided with a Huntington Local school bus driven by Connie Uhrig. Jones filed a complaint alleging negligence against Uhrig and Huntington Local. She later dismissed Uhrig as a party.
At the jury trial, Jones presented the testimony of Dr. Durgin without objection by Huntington Local. Dr. Durgin testified as to his opinions concerning Jones' future lost wages. He also opined about the need to discount lost future wages to present value. Dr. Durgin testified that, pursuant to the offset theory of economics, the decrease in the amount of future lost wages as a result of a reduction to its present value is generally offset by the increase in its value due to inflation. Huntington Local did not object to this testimony. At the end of the trial, the trial court instructed the jury that "the measure of any future damages is the present pecuniary loss which the plaintiff, with reasonable certainty, will sustain in the future, which is capable of measurement by the present value of money."
The jury returned a verdict in favor of Jones and awarded her five hundred thousand dollars in damages. The jury also answered interrogatories. The jury found that Huntington Local was one hundred percent at fault in the accident. The jury apportioned the damages as one hundred four thousand in past damages and three hundred ninety-six thousand in future damages. The jury further broke down the future damages into two hundred thousand in future lost wages and forty-six thousand in future medical expenses.
Huntington Local filed a motion for a judgment notwithstanding the verdict or a new trial. Huntington Local argued that the jury verdict should be set aside because it is not a legal entity subject to suit. Jones filed a motion contra and a motion to amend the pleadings if the trial court decided in Huntington Local's favor.
In its motion for a new trial, Huntington Local argued that it was entitled to a new trial for several reasons: (1) there was irregularity in the trial and misconduct of a party (specifically because Jones failed to provide copies of expert witnesses' reports and represented that no reports existed); (2) the judgment is not sustained by the weight of the evidence (specifically there was insufficient evidence to find its employee was negligent); (3) the judgment is contrary to law and the result of legal errors (specifically that Jones' vocational expert should not have been allowed to testify, that this expert did not reduce his findings to present value, and that the jury was instructed that Uhrig was unlawfully left of center at the time of the accident); and (4) that there was good cause to grant a new trial (specifically that Jones' counsel engaged in misleading and unfair tactics throughout the trial).
The trial court denied Huntington Local's motion for judgment notwithstanding the verdict, but granted its motion for a new trial. The trial court found that it had committed plain error by allowing Dr. Durgin to testify that any future damages did not have to be reduced to present value. The trial court stated that it had carefully considered the entire motion for new trial and found "it well-taken on one issue and one issue alone." The trial court also expressly found that there was no misconduct by the prevailing party. Jones appealed, asserting a single assignment of error:
 THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEE'S MOTION FOR A NEW TRIAL.
Huntington Local cross-appealed, asserting a single assignment of error:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF CROSS-APPELLANT BY DENYING CROSS-APPELLANT'S CIVIL RULE 50 MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT.
 II. We first consider Huntington Local's cross-appeal.
In its cross-appeal, Huntington Local argues that a suit brought only against a local school district, which fails to name the district's board of education, is not brought against a legal entity subject to suit. In response, Jones makes two arguments. First, Jones argues that a school district is a separate and distinct political subdivision created by the General Assembly and is capable of being sued. Second, Jones asserts that even if we find that Huntington Local is not a legal entity capable of being sued, the proper remedy is an amendment of the pleadings and not a judgment notwithstanding the verdict.
When reviewing a trial court's disposition of a Civ.R. 50(B) motion forjudgment notwithstanding the verdict, we apply the same test we apply in reviewing a directed verdict. Pariseau v. Wedge Products, Inc. (1988),36 Ohio St.3d 124, 127; Howell v. Dayton (1995), 102 Ohio App.3d 6, 13. However, a motion for judgment notwithstanding the verdict is evaluated on all evidence presented at trial, while a motion for a directed verdict may be evaluated on the evidence presented only during the plaintiff's case in chief. Chemical Bank of New York v. Newman (1990),52 Ohio St.3d 204, 206-207. The evidence admitted at trial must be construed most strongly in favor of the non-moving party, and, where there is evidence to support the non-moving party's position, the motion must be denied. Pariseau at 127.
Although a motion for judgment notwithstanding the verdict requires a trial court to review and consider the evidence, the motion does not present a question of fact or raise factual issues. Ruta v.Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, at paragraph one of the syllabus. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination. Pariseau at 127. The motion therefore presents a question of law, and this court conducts a de novoreview of the trial court's judgment. Howell at 13.
It is well established that all parties in a lawsuit must be legal entities with the capacity to be sued. Cf. Civ.R. 17(B); Patterson v. VMAuto Body (1992), 63 Ohio St.3d 573, 574, citing Barnhart v. Schultz
(1978), 53 Ohio St.2d 59, 61, overruled on other grounds, Baker v.McKnight (1983), 4 Ohio St.3d 125. If the defendant is not an actual or legal entity, then any judgment rendered against the defendant is void.Patterson at 576, citing Cobble v. Farmer's Bank (1900), 63 Ohio St. 528.
While we agree with Huntington Local that a school board is a legal entity subject to suit, R.C. 3313.17, we do not agree that this precludes a finding that a school district is also a legal entity subject to suit. Huntington Local contrasts the legal status of a board of education with that of a school district, which it contends is only a territorial designation. Jones makes the same argument she made to the trial court, which the trial court adopted in its decision. That is, that pursuant to R.C. Chapter 2744, a school district is a legal entity subject to suit.
We find, based upon R.C. Chapter 2744, that a school district is a legal entity subject to suit. R.C. 2744.02 provides that subject to certain statutory exceptions, "a political subdivision is liable in damages in a civil action for injury * * * allegedly caused by an act or omission of any of its employees in connection with a governmental or proprietary function." For purposes of R.C. Chapter 2744, a school district is a political subdivision. R.C. 2744.01(F). Therefore, pursuant to R.C. 2744.02, a school district may be liable for civil damages. See,e.g., Turner v. Central Local School District (1999), 85 Ohio St.3d 95.
Because R.C. Chapter 2744 assumes that a civil action may be brought against a political subdivision and includes a school district within the definition of a political subdivision, a civil action may be brought against a school district. For example, R.C. 2744.03(A) provides that "[i]n a civil action brought against a political subdivision * * * to recover damages for injury * * *, the following defenses or immunities may be asserted: * * *." See, also R.C. 2744.04(A) ("An action brought against a political subdivision * * * shall be brought within two years * * *); R.C. 2744.04(B) ("In the complaint filed in a civil action against a political subdivision * * *, the complainant shall include a demand for a judgment for the damages * * *"); R.C. 2744.05 ("in an action against a political subdivision to recover damages * * *"). Moreover, R.C. 2744.06
specifically contemplates that a judgment can be awarded against a political subdivision. See R.C. 2744.06 ("property * * * of a political subdivision [is] not subject to execution, judicial sale, garnishment or attachment to satisfy a judgment rendered against a political subdivision"). Accordingly, we find that Huntington Local is a legal entity subject to suit pursuant to Chapter R.C. 2744, and we overrule Huntington Local's only assignment of error.
 III.
We next address Jones' appeal. First, we address whether the trial court committed plain error in allowing Dr. Durgin to testify to the offset theory of inflation and present value. Because we find that the trial court erred in granting a new trial for that reason, we then consider whether the trial court should have granted a new trial for any of the other reasons advanced by Huntington Local.
 A.
In her only assignment of error, Jones asserts that the trial court erred in granting Huntington Local's motion for new trial because the trial court did not commit plain error by allowing Dr. Durgin to testify about the offset theory of economics.
Whether to grant or deny a motion for new trial is committed to the sound discretion of the trial court. State v. Matthews (1998),81 Ohio St.3d 375, citing State v. Schiebel (1990), 55 Ohio St.3d 71, paragraph one of the syllabus. We will not reverse a trial court's denial of a motion for new trial absent an abuse of that discretion. Shark v.Norfolk W. Ry. Co. (1995), 72 Ohio St.3d 307 . An abuse of discretion implies that a court's ruling is unreasonable, arbitrary, or unconscionable; it is more than an error in judgment. State ex rel.Richard v. Seidner (1996), 76 Ohio St.3d 149.
However, when the determination of whether to grant a new trial is a question of law, the order will be reversed on appeal only upon a showing that the decision was erroneous as a matter of law. Rohde v. Farmer
(1970), 23 Ohio St.2d 82, paragraph two of the syllabus.
While the Supreme Court has never explicitly stated the proper standard of review for a determination of whether to grant a new trial based upon plain error, we look to the recent case of Perez v. Falls Financial, Inc.
(2000), 87 Ohio St.3d 371 for guidance. In Perez, the Court reviewed the appellate court's determination that the trial court had committed plain error in instructing the jury. The Court made its own determination of whether the trial court committed plain error. In its analysis the Court stated that "whatever error the trial judge may have made, we cannot say that it affected `basic fairness, integrity or public reputation of the judicial process.'" Perez at 377, citing Goldfuss at the syllabus. The court found that the trial judge's instruction did not constitute plain error. Perez at 377. Thus, we determine that the Court engaged in a denovo review of whether the trial court committed plain error. Thus, we engage in a de novo review of the trial court's decision that it committed plain error.
The Ohio Supreme Court explained the civil plain error doctrine inGoldfuss v. Davidson (1997), 79 Ohio St.3d 116. When we apply the plain error doctrine to civil cases, we
 must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings.
Goldfuss at 121, citing Schade v. Carneige Body Co. (1982),70 Ohio St.3d 207, 209; LeFort v. Century 21-Maitland Realty Co. (1987),32 Ohio St.3d 121, 124; Cleveland Elec. Illum. Co. v. Astorhurst LandCo. (1985), 18 Ohio St.3d 268, 275. "The plain error rule should never be applied to reverse a civil judgment simply because a reviewing court disagrees with the result obtained in the trial court, or to allowlitigation of issues which could easily have been raised and determinedin the initial trial." (Emphasis added.) Goldfuss at 122.
We find that the trial court did not commit plain error in allowing Dr. Durgin to testify as to the offset theory of economics. Assumingarguendo that such testimony would not have been admissible if Huntington Local had objected, it is clear that this is exactly the type of issue that Huntington Local could have easily raised for the trial court to determine in the initial trial. There is no reason that Huntington Local could not have raised its objection to Dr. Durgin's testimony at trial. Moreover, the jury was properly instructed that "the measure of any future damage is the present pecuniary loss which the plaintiff, with reasonable certainty, will sustain in the future, and which is capable of measurement by the present value of money." (Emphasis added.) That the jury heard Dr. Durgin's opinion that the decrease for present value is, in theory, offset by the increase for inflation does not seriously affect the basic fairness, integrity or public reputation of the judicial process or challenge the legitimacy of the underlying judicial process itself, because the jury was instructed that future damages must be awarded in present value.
Parties in civil litigation bear responsibility for framing the issues and bear the loss caused by poor strategy decisions, miscalculations, or errors. Goldfuss at 122, citing Gallagher v. Cleveland Browns FootballCo. (1996), 74 Ohio St.3d 427, 433, and Roth v. Roth (1989),65 Ohio App.3d 768, 776. Huntington Local chose to argue that Dr. Durgin's opinion should be disregarded because he did not consider Jones' actual employment and earnings before the injury. That Dr. Durgin's testimony may have affected the outcome of the trial does not affect the reality that Huntington Local could easily have raised its objection to Dr. Durgin's testimony at trial and the trial court could have determined the issue. This is not one of the extremely rare cases with exceptional circumstances requiring a reversal to prevent a manifest miscarriage of justice. Therefore, we find, as a matter of law that the trial court did not commit plain error in allowing Dr. Durgin's testimony on the offset theory of economics. Accordingly, the trial court's decision to grant a new trial for this reason was unreasonable because it was wrong as a matter of law, and thus the trial court abused its discretion.
However, this does not end our discussion of Jones' assignment of error because we may decide an issue on grounds different from those determined by the trial court. See State v. Peagler (1996), 76 Ohio St.3d 496, paragraph one of the syllabus. It is in this context that we address the arguments supporting the "appellee's assignment of error" set forth by Huntington Local.
First, Huntington Local argues that the trial court should have granted it a new trial because Jones did not timely identify Dr. Durgin, or any other vocational expert, as a witness. Jones first identified Dr. Durgin as an expert witness on September 2, 1999. This was about two months after the discovery deadline set by the trial court and about two months before trial. Huntington Local asserts that when one side deliberately disrupts the free flow of information by failing to disclose an expert, the only equitable result is to either exclude the witness or allow the other side time to find and present rebuttal testimony. Here, Huntington Local did not attempt to depose Dr. Durgin before trial and waited to raise this issue until the middle of the trial. In response, the trial court offered Huntington Local a continuance, but Huntington Local declined the offer. Thus, we cannot say that the trial court acted unreasonably, arbitrarily, or unconscionably in failing to grant a new trial for this reason. Accordingly, we find that the trial court did not abuse its discretion in failing to grant a new trial because Jones first identified Dr. Durgin as a witness after the discovery deadline.
Second, Huntington Local argues that the trial court should have granted it a new trial because the trial court erroneously instructed the jury on the issue of negligence and such error is plain error.
"On appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Civ.R. 51(A). Thus, failure to timely advise a trial court of possible error results in a waiver of the issue for purposes of appeal. Goldfuss, 79 Ohio St.3d at 121; Gallagher,74 Ohio St.3d at 436-437. However, we may notice plain error in the extremely rare case involving exceptional circumstances where the error "seriously affects the basic fairness, integrity or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." Goldfuss at paragraph one of the syllabus.
Huntington Local argues that the following jury instruction given by the trial court was error:
 "Drivers of vehicles must drive on the — right half of the roadway. Failure to do so is negligence unless it falls within one of the exceptions to this rule. However. You are instructed that none of the exceptions apply to the facts of this case. "
Huntington Local asserts that the requirement that one drive on the right side of the road only applies to roadways of sufficient width. See R.C.4511.25. It asserts that the bus was too wide to stay on the right half of the road. Jones urges us to consider the above description in the context of the jury instructions on negligence. After introducing the concepts of negligence and explaining its elements, the trial court instructed the jury as follows:
 It is necessary that you know the rights and duties of each party so that you may decide whether anyone was negligent. Public streets and highways are maintained for the public and all persons have equal rights to their use. Driver of vehicles and others who use the streets and highways have the duty to use ordinary care, both for their own safety and for the safety of others. Failure to use such care is negligence. In addition, there are laws which control persons who use the streets or highways which apply to specific issues in this case. Some of the law may apply under one theory of the case but not under the other. As the triers of fact, you must decide what the facts are and then apply the law relating to those facts. Drivers of vehicles going in the opposite directions must pass each other to the right. On roadways having writ [sic], width for not more than one line of traffic in each direction, drivers must give each other one half of the main traveled portion of the roadway or as nearly one half as reasonably possible. The drivers of view [sic], of a vehicle may assume, in the absence of notice or knowledge to the contrary that an approaching vehicle will be driven on the right half of the roadway. Drivers of vehicles must drive on the — — right half of the roadway. Failure to do so is negligence unless it falls within one of the exceptions to this rule. However, you are instructed that none of the exceptions apply to the facts of this case.
Jones argues that part of Huntington Local's argument to the jury was that Jones was negligent because when Uhrig first saw Jones' car, it was in the middle of the road.
Here we find that the trial court did not err in giving the disputed instruction. The disputed instruction was essential to Huntington Local's theory that Jones was comparatively negligent. "Under the invited-error
doctrine, a party will not be permitted to take advantage of an error that he himself invited or induced the trial court to make." State exrel. Beaver v. Konteh (1998), 83 Ohio St.3d 519, 521, State ex rel.Soukup v. Celebrezze (1998), 83 Ohio St.3d 549, 550; Hal ArtzLincoln-Mercury, Inc. v. Ford Motor Co. (1986), 28 Ohio St.3d 20, paragraph one of the syllabus.
Even if the trial court had erred in giving the jury the disputed instruction, the error did not rise to the level of plain error because, viewing the instruction in the context of all of the instructions to the jury and the parties' theories of the case, it did not affect the integrity of the judicial process or challenge the legitimacy of the underlying process itself. Accordingly, we find that the trial court did not abuse its discretion in failing to grant a new trial based upon the disputed instructions.
Third, Huntington Local argues that the trial court should have granted it a new trial because Jones failed to produce copies of reports from her two expert witnesses. Huntington Local asserts that as a result it was denied a fair trial.
During the discussion of Huntington Local's objection to the testimony of Dr. Durgin, the issue of whether the experts had prepared reports came up. Although the trial court did not rule upon this issue, it stated that after listening to the audiotapes of the discussion, it did not believe that Jones' counsel represented that there were no reports. The trial court believed that the voice inflections of the people involved indicated that Jones' counsel disagreed with Huntington Local's counsel's statement that there were no reports.
Thus, while Jones' counsel may not have believed he had a duty to produce the reports during discovery, there is no indication that he intentionally hid the reports or that he intentionally misled either Huntington Local or the trial court. During this discussion, Huntington Local never specifically asked for the reports and the trial court did not order Jones' counsel to produce the reports.
Therefore, given the confusion surrounding the reports, we find that the trial court did not act unreasonably, arbitrarily, or unconscionably in denying Huntington Local's motion for a new trial on this ground.
Having found that the trial court erred by granting Huntington Local's motion for new trial on the basis that it committed plain error in allowing Dr. Durgin's disputed testimony and that the trial court did not abuse its discretion in denying Huntington Local's motion for new trial because: (1) Jones failed to identify its expert witnesses in a timely manner; (2) of improper jury instructions; and (3) Jones did not produce the expert witnesses' reports, we sustain Jones' only assignment of error.
 IV.
In sum, we overrule Huntington Local's only assignment of error and sustain Jones' only assignment of error. Therefore, we affirm in part and reverse in part the judgment of the trial court. Because we have reversed the trial court's decision to grant a new trial, we remand this case to the trial court with instructions for it to reinstate the jury's verdict.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART AND REVERSED IN PART and the cause remanded to the trial court for further proceedings consistent with this opinion and that costs herein be taxed to the appellee.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as the date of this Entry.
Abele, P.J. and Evans, J.: Concur in Judgment and Opinion.
______________________ Roger L. Kline, Judge