CHUTE, D.B.A. GOLDEN YEARS ANTIQUE & COIN SHOP, APPELLEE, *v.* BANK ONE OF AKRON, N.A., F.K.A. THE FIRESTONE BANK, APPELLANT ET AL.

(No. 10842—Decided June 15, 1983.)

*Mr. Thomas R. Pitts,* for appellee.
*Mr. Ronald N. Towne* and *Ms. Sheryl S. Kantz,* for appellant.

MAHONEY, J. This appeal is taken from an order enjoining the Firestone Bank, n.k.a. Bank One of Akron ("bank"), from freezing the accounts of plaintiff-appellee, David Chute, and awarding Chute $28 in damages. We reverse.

Facts

This suit was brought in the trial court as an action for fraud by David Chute, d.b.a. Golden Years Antique & Coin Shop ("Chute"), against James Everhart and Sidney Perry. The bank was also named as a defendant wherein

Chute requested an injunction preventing the bank from charging Chute's accounts to recover the amount the bank had improperly paid out over a stop payment order on a check and to recover damages which resulted from the bank's improper payment.

The alleged fraud occurred during a transaction involving the sale of metal rods. Everhart and Perry presented Chute with a bundle of rods which were marked "gold dental rods." Chute tested the rods to determine whether they were, in fact, gold rods. Everhart and Perry subsequently presented him with additional rods. On September 17, 1980, Everhart and Perry returned to Chute's place of business with the final bundle of rods. The trial court found that as a result of the transaction, Chute received approximately three pounds of metal rods which had been tested as being gold and Everhart and Perry received a check for $4,000 drawn on Chute's account with the bank.

Everhart and Perry made several attempts to cash Chute's check on September 17, but were refused as the checking account had insufficient funds. On the following day they took the check to the Main Street branch of the bank where the teller cashed the check.

The record indicates that Chute placed an oral stop payment order on his checking account on the afternoon of September 17. The trial court found that the bank had made an improper payment over a valid stop payment order. The trial court ordered that the bank be enjoined from further freezing Chute's accounts and awarded him $28 in damages. The trial court rendered judgment in favor of Everhart and Perry on the issue of fraud. No appeal has been taken from that determination.

Discussion—Third Assignment of Error

"The finding of the trial court that the oral stop payment order was a valid stop payment order is contrary to the manifest weight of the evidence."

The bank asserts that the stop payment order was invalid on two grounds: first, the item was not properly payable because there were insufficient funds in the checking account; and second, the order was not made so as to give the bank a reasonable time within which to act.

The record indicates that at the time the check for $4,000 was drawn the balance in Chute's account was $287.65. The check, when drawn, created an overdraft. A check which creates an overdraft, but is otherwise properly payable, is still properly payable. R.C. 1304.24 states, in part, that:

"(A) As against its customer, a bank may charge against his account any item which is otherwise properly payable from that account even though the charge creates an overdraft."

The check was not rendered invalid by virtue of the fact that it created an overdraft. A bank may pay a check even though it creates an overdraft and charge the customer's account. White & Summers, Uniform Commercial Code (1980) 657, 661, Section 17-3. The payment of an overdraft by a bank is in the nature of a loan to the customer premised upon the condition of repayment.

The bank further alleges that the stop payment order was not placed on the account so as to give the bank a reasonable opportunity to act. The record indicates that the check was issued on September 17, 1980. Chute placed an oral stop payment order on his account at approximately 1:15 p.m. on September 17 by telephone to the Springfield branch of the bank located on Canton Road. The order identified the maker, the amount of the check, the check number and the account number. The check was cashed at the Main Street branch of the bank on September 18, 1980.

The trial court found that the bank had a reasonable opportunity within

which to honor the stop payment order. Bank personnel testified that a stop payment order can be placed on an account by direction to the computer within a short time after the order is initially received. Once the order has been placed on the computer, the information is immediately available to all other branches of the bank. The record further indicates that the teller who cashed the check on September 18 did not check the computer to determine the status of Chute's account.

Based upon the record before us, we find there was substantial credible evidence to support the trial court's finding that a valid stop payment order had been placed on Chute's account prior to the time the check was cashed. Accorddingly, the third assignment of error is not well-taken.

### Discussion—First and Second Assignments of Error

"1. The trial court erred as a matter of law in not subrogating Bank One to the rights of defendants, James Everhart and Sidney Perry, as against the plaintiff-appellee.

"2. The plaintiff-appellee failed to meet its [sic] burden of proof as to the causation, fact and amount of loss occasioned by the payment over the stop order; said finding of the court to the contrary being erroneous as a matter of law and against the manifest weight of the evidence."

The resolution of these assignments of error is controlled by the interaction of R.C. 1304.24, 1304.26 and 1304.30. The pertinent part of R.C. 1304.24 is set forth above. R.C. 1304.26 provides, in part:

"(A) A customer may by order to his bank stop payment of any item payable for his account but the order must be received at such time and in such manner as to afford the bank a reasonable opportunity to act on it prior to any action by the bank with respect to the item described in section 1303.23 of the Revised Code.

"'* * *

"(C) The burden of establishing the fact and amount of loss resulting from the payment of an item contrary to a binding stop payment order is on the customer."

R.C. 1304.30 provides, in part:

"If a payor bank has paid an item over the stop payment order of the drawer or maker or otherwise under circumstances giving a basis for objection by the drawer or maker, to prevent unjust enrichment and only to the extent necessary to prevent loss to the bank by reason of its payment of the item, the payor bank shall be subrogated to the rights:

"'* * *

"(B) of the payee or any other holder of the item against the drawer or maker either on the item or under the transaction out of which the item arose; and

"(C) of the drawer or maker against the payee or any other holder of the item with respect to the transaction out of which the item arose."

We believe that these sections were intended to operate as a credit and subrogation process as reasoned by the Massachusetts Supreme Court in *Siegel* v. *New England Merchants National Bank* (1982), 386 Mass. 672, 437 N.E. 2d 218.

When the bank improperly paid the check because of a valid stop payment order, it was required to recredit its customer's account. See *Cincinnati Ins. Co.* v. *First National Bank* (1980), 63 Ohio St. 2d 220 [17 O.O.3d 136]. This may produce an unjust enrichment to some party. The bank in order to recover its loss became subrogated under R.C. 1304.30 to any rights prior holders or the payee may have had against the drawer-maker on either the check or the initial underlying transaction and, alternatively, to any rights the drawer-maker may have against the payee or other holders. See *Mitchell* v. *Republic Bank & Trust Co.* (1978), 35 N.C. App. 101, 239 S.E. 2d 867. These rights may be asserted defensively by the bank where, as here, the customer brings an action for wrongful debit.

Under R.C. 1304.26(C) the customer (Chute) has the burden of proving "the fact and amount of loss." In establishing the existence or absence of actual loss the customer must show some loss other than the mere debiting of the customer's account. See *Thomas* v. *Marine Midland Tinkers National Bank* (1976), 86 Misc.2d 284, 381 N.Y. Supp. 2d 797. His "loss" in other words is equivalent to his rights and defenses against the parties (Everhart and Perry) to which the bank may be subrogated. In this case the underlying transaction is at issue rather than the check since we are not dealing with any holders but only the original drawer and payee.

Chute predicated his entire claim against Everhart and Perry on fraud. The trial court found that the proof failed. Thus, we are left with the underlying transaction which is simply a sale of goods from Everhart and Perry to Chute for $4,000. The bank, having paid Chute's debt, now desires to stand in the shoes of Everhart and Perry to collect from Chute by debiting his accounts.

Chute, however, argues that the bank never asserted any subrogation rights under R.C. 1304.30(B) against him but rather, in its counterclaim and cross-claim, sought subrogation under R.C. 1304.30(C) against Everhart and Perry. The bank counters now by saying (in its brief but not at trial) that due to a typographical error the words "plaintiff" and "defendants" were juxtaposed in the third paragraph of its cross-claim and that rights against Chute were actually intended to be claimed. We do not need to determine what the effect, if any, is of the alleged juxtaposition. The proper place to assert any rights against Chute under R.C. 1304.30(B) was in its counterclaim not in its cross-claim against the other defendants, Everhart and Perry. The bank's cross-claim properly pled subrogation rights against Everhart and Perry. We hold, however, that the bank failed to properly assert any claims against Chute in its pleadings.

Nevertheless, the bank claims that even if the issue of subrogation was not properly pled, that it was tried by implied consent under Civ. R. 15(B). We agree after looking at the totality of the circumstances shown by the record in this case.

Ordinarily it would be incumbent upon a bank claiming subrogation to assert its rights and identify the status of the parties in whose place it claims. See *Siegel* v. *New England Merchants National Bank, supra.* However, a bank cannot be called upon to make out a case against either party where the facts of the underlying transaction are not within its knowledge. Thus, it was necessary for the bank to plead, alternatively, by way of a counterclaim against Chute and a cross-claim against Everhart and Perry. It may have attempted to do that, but it was unsuccessful. The case was tried primarily on the issue of fraud as between Chute and Everhart *et al.*, and on the validity of the stop payment order between the bank and Chute. There were no pretrial orders defining issues, or motions during trial to amend the pleadings. The evidence was uncontroverted that the bank paid out on the check. The issue of fraud was thoroughly tried. No more evidence was necessary to establish the bank's subrogation rights. There is no prejudice to Chute since he premised his right to recovery on fraud in the underlying transaction. See 3 Moore's Federal Practice (1978), Paragraph 15.13 [2], at 15-162. The only issue was against whom was the bank to be subrogated? That would depend on the outcome of the fraud issue.

Case law indicates that a court may not base its decision on an issue that was tried inadvertently. Implied consent to try an unpleaded issue is not established merely because evidence relevant to that issue was introduced without objection. At least it must appear that the parties understood that the evidence was aimed at the unpleaded issue.

At the conclusion of Chute's case, the bank as well as the other two defendants

126

made motions for directed verdicts which were overruled as to Perry and the bank but granted as to Everhart. However, in the colloquy between the judge and various counsel on that subject it is clear that the bank desired to be subrogated to the rights of the prevailing party. Thus, we hold that there was implied consent to try the issue of subrogation under R.C. 1304.30(B) as well as R.C. 1304.30(C) and that the final judgment would depend on which party prevailed on the fraud issue as between Chute and Perry.

The trial court's finding as to the bank's claim for relief did not recognize that the bank could be subrogated to the rights of Everhart and Perry. We also believe the court erroneously stated that the bank had a burden of proving a theory of recovery by Chute against Everhart and Perry so that it could be subrogated to his rights. Accordingly, the first and second assignments of error are well-taken.

### Summary

In accordance with our opinion above, and pursuant to App. R. 12, we reverse the judgment of the trial court and enter judgment in favor of the bank against Chute, and we remand this cause to the trial court to enter such judgment in the amount of $4,000 less the amount already debited against Chute's accounts, together with the court costs but without any prejudgment interest.

*Judgment reversed.*

QUILLIN, P.J., and GEORGE, J., concur.