EKLOF MARINE CORPORATION *v.* AMERICAN
NATIONAL BANK ET AL.
(15058)

PETERS, C. J., and CALLAHAN, BORDEN, KATZ and PALMER, Js.

Argued January 6—decision released February 7, 1995

*Carol S. Ljungquist,* with whom were *Patricia E. Rosenberg* and, on the brief, *Mitchell J. Rosenfeld,* for the appellant (plaintiff).

*Matthew B. Woods,* for the appellee (named defendant).

PER CURIAM. The sole issue in this commercial appeal is whether, after a judgment creditor has served a payor bank with an execution order garnishing funds in a depositor's account, General Statutes § 52-367a[1] permits the bank to exercise its right of setoff against these same funds, if the bank acts within the midnight deadline established by that statute. The plaintiff, Eklof Marine Corporation, a judgment creditor of National Oil Service, Inc. (National Oil), filed a two count complaint against the defendant American National Bank (bank), alleging that the bank had violated § 52-367a and the Connecticut Unfair Trade Practices Act

---

[1] General Statutes § 52-367a provides in relevant part: "EXECUTION AGAINST DEBTS DUE FROM BANKING INSTITUTION. DEBTOR OTHER THAN NATURAL PERSON. As used in this section and section 52-367b, the term 'banking institution' means a state bank and trust company, national banking association, savings bank, industrial bank, credit union, federal credit union, savings and loan association and federal savings and loan association. Execution may be granted pursuant to this section against any debts due from any banking institution to a judgment debtor which is not a natural person. If execution is desired against any such debt, the plaintiff requesting the execution shall so notify the clerk, and the clerk shall issue such execution containing a direction that the officer serving the same shall make demand (1) upon the main office of any banking institution having its main office within the county of such officer . . . for the payment of any debt due to the judgment debtor, and, after having made such demand, shall serve a true and attested copy thereof, with his actions thereon endorsed, with the banking institution officer upon whom such demand is made. If any such banking institution upon which such execution is served and upon which such demand is made is indebted to the judgment debtor, it shall pay to such officer, in the manner and at the time hereinafter described, the amount of such indebtedness not exceeding the amount due on such execution, to be received and applied on such execution by such officer. Such banking institution shall act upon such execution according to section 42a-4-303 before its midnight deadline, as defined in section 42a-4-104. If such banking institution fails or refuses to pay over to such officer the amount of such debt, not exceeding the amount due on such execution, such banking institution shall be liable in an action therefor to the judgment creditor named in such execution, and the amount so recovered by such judgment creditor shall be applied toward the payment of the amount due on such execution."

(CUTPA); General Statutes § 42-110b;[2] by refusing to pay funds properly garnished by the plaintiff. Both parties filed motions for summary judgment. After denying the plaintiff's motion, the trial court rendered summary judgment in favor of the bank. The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

The facts are undisputed. The plaintiff recovered a valid judgment for $32,471.21 against National Oil in the United States District Court for the Southern District of New York. After this judgment had been registered with the United States District Court for the District of Connecticut, a clerk of that court issued a "bank execution order" for the collection of the amount of the judgment from any Connecticut banking institution. National Oil maintained a deposit account with the bank. On June 18, 1992, when the execution order was served on the bank, the National Oil account had a balance of $21,556.09.

On August 8, 1986, National Oil had borrowed $100,000 from the bank. This debt was in the form of a demand note. On June 18, 1992, the note was in default. Within an hour of receipt of the execution order, the bank exercised a right of setoff in accordance with express terms in its deposit account agreement with National Oil. The bank thereafter responded to the execution order by informing the sheriff that there were no funds in the National Oil account.

On the basis of this factual record, the trial court denied the plaintiff's motion for summary judgment and

---

[2] General Statutes § 42-110b (a) provides, in relevant part, that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

granted the bank's motion for summary judgment. The court ruled that the bank had exercised its right of setoff within the time frame established by § 52-367a and, accordingly, that the bank's setoff took priority over the plaintiff's execution order. In this appeal from the trial court's judgment in favor of the bank, the plaintiff renews its claim that service of its execution notice on the bank established the plaintiff's legal right to the funds in the National Oil account and that thereafter the bank could no longer exercise any right of setoff. We disagree.

The plaintiff's claim cannot succeed in light of the reasoning of our decision, during the pendency of the plaintiff's appeal, in *Normand Josef Enterprises, Inc.* v. *Connecticut National Bank,* 230 Conn. 486, 646 A.2d 1289 (1994). In that case, we concluded that "§ 52-367a imposes a midnight deadline on a bank served with an execution. The midnight deadline arguably was intended by the legislature to apply directly even in transactions not governed by [General Statutes] § 42a-4-303. Alternatively, if § 52-367a has no express time limitation for transactions that are not governed by § 42a-4-303, the bank must act within a reasonable time, and that reasonable time period is, by analogy, defined as the midnight deadline that is the baseline generally . . . governing payouts by banks." Id., 503. The term "midnight deadline" is defined by General Statutes § 42a-4-104 (a) (10) as "midnight on [a bank's] next banking day following the banking day on which it receives the relevant . . . notice . . . ."[3] General

---

[3] General Statutes § 42a-4-104 provides in relevant part: "DEFINITIONS AND INDEX OF DEFINITIONS. (a) In this article, unless the context otherwise requires . . . (10) 'midnight deadline' with respect to a bank is midnight on its next banking day following the banking day on which it receives the relevant item or notice or from which the time for taking action commences to run, whichever is later . . . ."

Statutes §§ 42a-4-301 and 42a-4-302[4] establish the midnight deadline as the standard time frame within which a payor bank must act on demands for payment.[5] *Normand Josef Enterprises, Inc.* v. *Connecticut National Bank,* supra, 502–503.

In *Normand Josef Enterprises, Inc.* v. *Connecticut National Bank,* supra, 230 Conn. 507–508, we held that,

---

[4] General Statutes § 42a-4-301 provides in relevant part: "DEFERRED POSTING. RECOVERY OF PAYMENTS BY RETURN OF ITEMS. TIME OF DISHONOR. RETURN OF ITEMS BY PAYOR BANK. (a) If a payor bank settled for a demand item other than a documentary draft presented otherwise than for immediate payment over the counter before midnight of the banking day of receipt, the payor bank may revoke the settlement and recover the settlement if, before it has made final payment and before its midnight deadline, it (1) returns the item; or (2) sends written notice of dishonor or nonpayment if the item is unavailable for return.

"(b) If a demand item is received by a payor bank for credit on its books, it may return the item or send notice of dishonor and may revoke any credit given or recover the amount thereof withdrawn by its customer, if it acts within the time limit and in the manner specified in subsection (a)."

General Statutes § 42a-4-302 provides in relevant part: "PAYOR BANK'S RESPONSIBILITY FOR LATE RETURN OF ITEM. (a) If an item is presented to and received by a payor bank, the bank is accountable for the amount of: (1) A demand item, other than a documentary draft, whether properly payable or not, if the bank, in any case in which it is not also the depositary bank, retains the item beyond midnight of the banking day of receipt without settling for it or, whether or not it is also the depositary bank, does not pay or return the item or send notice of dishonor until after its midnight deadline . . . ."

[5] "See also General Statutes § 42a-4-303 (incorporating General Statutes § 42a-4-302 into its provisions regarding acting upon an item); General Statutes § 42a-4-202 (b) (specifying midnight deadline as general standard for timely action by collecting bank); General Statutes § 42a-4-213 (c) (specifying midnight deadline as default rule for final settlement of cashier's or teller's check that has not been presented or forwarded for collection); and General Statutes § 42a-4-214 (a) (midnight deadline used as usual time frame to determine collecting bank liability for item after settlement has been revoked and where neither item has been returned nor notification sent).

"The midnight deadline serves as a safe harbor provision for a payor bank because it does not become accountable for the amount of an item until after the midnight deadline has passed, unless, before that deadline has passed, it already has made final payment pursuant to General Statutes § 42a-4-215." *Normand Josef Enterprises, Inc.* v. *Connecticut National Bank,* supra, 230 Conn. 502–503 n.14.

once a bank has been served with a valid execution order, the bank violates § 52-367a if it fails to execute its right of setoff within the applicable midnight deadline. A fortiori, we hold today that a bank does not violate § 52-367a if, as in this case, it executes its right of setoff before the expiration of its midnight deadline.

Because the plaintiff's CUTPA claim was predicated on the bank's alleged violation of § 52-367a, the plaintiff cannot succeed on either count of its complaint. The trial court, therefore, correctly granted the bank's motion for summary judgment.

The judgment is affirmed.