[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] RULING ON THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
 I STATEMENT OF THE CASE
In May 1998, the plaintiff, WD Acquisition, LLC ("WD"), instituted this action by writ of scire facias pursuant to General Statutes §52-381 against the defendant, First Union National Bank ("First Union"). The complaint alleges that First Union was served with an order to garnish the funds of an entity called RKE Associates ("RKE"), that First Union failed to set aside the funds pursuant to the garnishment, and that First Union is therefore liable for the amount of those funds. Pending before the court is the defendant's motion for summary judgment. The more specific, undisputed facts of this matter as established by the pleadings and the parties' submissions are as follows.
On October 27, 1997, at approximately 12:00 p.m., the plaintiff served a garnishment notice on the defendant, instructing the defendant to place a hold on the accounts of RKE. (Affidavit of Deputy Sheriff Albert Caliendo, Plaintiff's Exhibit 1.) Process was served at the defendant's branch office located at 3 Sugar Hollow Road, Danbury, Connecticut, also known as the airport branch. (Ex parte Prejudgment Remedy Claim and Sheriffs Return.) The parties stipulate that on 3:26 p.m. that same day, CT Page 10358 a representative of RKE appeared in person at the airport branch office of the defendant and made a "counter" withdrawal in the amount of $32,318.26.[1] (Affidavit of Georgina Sherman, Operations Consultant for First Union, ¶¶ 4 and 7.) The defendant did not place a freeze on the account of RKE until midnight of the following day, October 28, 1997. (Affidavit of Armond Byrd, Manager of Legal Processing of First Union.) At that time, $60.97 remained in the two RKE accounts to be garnished. (Affidavit of Armond Byrd.) The plaintiff did not recover any funds from the accounts of RKE held by the defendant after execution of the judgment. (Plaintiffs Exhibit 2.)
On October 22, 1999, the defendant filed a motion for summary judgment, and filed a supplemental memorandum in support on January 10, 2001. In support of its motion, the defendant submits the following documents: (1) responses to plaintiffs interrogatories dated November 20, 1998; (2) the affidavit of Armond Byrd, Manager of Legal Processing for the defendant; (3) copies of statements of the activity on the accounts of RKE; (4) a copy of the withdrawal slip used by the RKE employee when making the questioned withdrawal; (5) a copy of the garnishment papers served on the defendant; and (6) the affidavit of Georgina Sherman, operations consultant for the defendant.
The plaintiff filed an objection to the motion on April 10, 2001. In support of its position, the plaintiff submits the following documents: (1) the affidavit of Albert Caliendo, Deputy Sheriff for Fairfield County; (2) the affidavit of Karen Elstein, paralegal in the offices of the plaintiffs former attorneys; and (3) a copy of the process papers served on the defendant on October 27, 1997.
 II DISCUSSION
"[S]ummary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Milesv. Foley, 253 Conn. 381, 385, 752 A.2d 503 (2000). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) Id., 386.
The defendant argues that there are no genuine issues of material fact and it is entitled to judgment as a matter of law because it complied with the garnishment order within a reasonable time under the provisions of the Uniform Commercial Code. According to the defendant, a reasonable CT Page 10359 time is equivalent to the "midnight deadline" as defined in General Statutes § 42a-4-104 (a) (10), which in this case would be midnight of October 28, 1997, the day after the service of the garnishment.[2]
The plaintiff, on the other hand, argues that the "midnight deadline" does not apply to gamishments under General Statutes § 52-329. Instead, the plaintiff insists that garnishments take effect immediately at the time of service of process, or alternatively, garnishments take effect at a "reasonable time" after service of process. According to the plaintiff, what constitutes a "reasonable time" is fact specific, and therefore, presents a genuine issue of material fact requiring a trial, rather than a summary disposition.
When interpreting statutes, courts are guided by general principles of statutory construction. "[The court's] fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Furthermore, [the court presumes] that laws are enacted in view of existing relevant statutes . . . and that [s]tatutes are to be interpreted with regard to other relevant statutes because the legislature is presumed to have created a consistent body of law." (Internal quotation marks omitted.) Matey v. Dember,256 Conn. 456, 480, ___ A.2d ___ (2001).
The procedures for a garnishment are contained in General Statutes § 52-329, which provides the following in relevant part:
 [w]hen the effects of the defendant in any proposed or pending civil action in which a judgment or decree for the payment of money may be rendered are concealed in the hands of his agent or trustee so that they cannot be found or attached, or when a debt other than earnings . . . is due from any person to such defendant, or when any debt, legacy or distributive share is or may become due to such defendant from the estate of any deceased person or insolvent debtor, the plaintiff may insert in his writ. . . . a direction to the officer to leave a true and attested copy thereof and of the accompanying complaint . . . with such agent, trustee or debtor of the defendant, or, as the case may be, with the executor, administrator or trustee of such estate, or at the usual place of abode of such garnishee; and from the time of leaving suchCT Page 10360 copy all the effects of the defendant in the hands of any such garnishee, and any debt due from any such garnishee to the defendant, and any debt, legacy or distributive share, due or that may become due to him from such executor, administrator or trustee in insolvency, not exempt from execution, shall be secured in the hands of such garnishee to pay such judgment as the plaintiff may recover. (Emphasis added).
Thus, by relying on the language of § 52-329 alone one may conclude that a garnishee is required to secure and set aside funds of the debtor immediately "from the time" when the writ of garnishment is served on the bank. However, in addition to the requirements of the general garnishment statute, banking institutions are also subject to the federal statutes and regulations, as well as the statutory requirements of the Uniform Commercial Code. Normand Josef Enterprises, Inc. v. Connecticut NationalBank, 230 Conn. 486, 500, 646 A.2d 1289 (1994). Consequently, although raised by the plaintiff, the plaintiff does not seriously contend, and the court expressly rejects, the position that a § 52-329 garnishment on a bank is effective upon service. Both parties agree that under the Code, First Union had a time period after receipt of the writ of garnishment to process it and to freeze RKE's accounts. The parties also agree that the scope of this time period is controlled by the applicability of the Supreme Court's decision in Normand Josef to this case.
Normand Josef, supra, 230 Conn. 486, did not involve a prejudgment garnishment, but a post-judgment execution under § 52-367a of the General Statutes.[3] More particularly, in Normand Josef the plaintiff served executions on the defendant bank on October 25, 1991, and on November 6, 1991. Id., 489-90. The bank failed to honor the executions claiming that it had exercised a right of setoff against funds in the debtor's account to satisfy a debt owed by the debtor to the bank. Id. The trial court found that the setoffs were made on October 29 and November 8, respectively. Id., 491. To resolve this dispute between the judgment creditor and the bank, the Supreme Court construed the language of § 52-367a, which provides that when a bank is served with an execution on any debt owed by the bank to a judgment debtor, the bank "shall act upon such execution according to section 42a-4-303 before its midnight deadline, as defined in section 42a-4-104." Id., 493-503.
In construing § 52-367a, the Court first concluded that although this statute refers to § 42a-4-303[4] of Connecticut's Uniform Commercial Code, the provisions of § 42-4-303 were inapplicable to the facts presented in Normand Josef, supra, 230 Conn. 493-95. Section CT Page 1036142a-4-303 addresses priority disputes between "items" (such as checks) and so called "legals" (such as executions, setoffs, and stop payment orders). The priority dispute in Normand Josef, supra, 493-95, was not between an "item" and a "legal," but between two "legals" — an execution and a setoff. For an analysis of § 4-303 of the Uniform Commercial Code, see 2 J. White R. Summers, Uniform Commercial Code (4th Ed. 1995) § 21-7.
The Supreme Court next explained that the language of § 52-367a
could be read either as incorporating the midnight deadline or as having no express time limit at all. Normand Josef, supra, 230 Conn. 500-01. The court reasoned that if § 52-367a was interpreted to have no express time limit concerning when a bank was required to act on an execution, then a "reasonable time" would have to be implied, and in turn, any such time requirement, by analogy, would be guided by the Code: "Looking to the Uniform Commercial Code by way of analogy in this case, we are persuaded that the midnight deadline contained in article four is an appropriate definition of a reasonable time for a bank to act in response to a service of an execution under § 52-367a." Id., 502.
As compared to Normand Josef, the present case does in fact involve disputes between an "item" and a "legal" (a garnishment), and therefore, § 42a-4-303 controls. See General Statutes § 42a-4-104 (a)(9) (an item is defined as "an instrument or a promise or order to pay money handled by a bank for collection or payment".) General Statutes §42a-4-303 explicitly gives a bank "reasonable time" after service to process the garnishment and set aside the funds. First Union argues that under Normand Josef, this time period must be viewed as being the bank's midnight deadline.
The plaintiff insists that First Union's position is misplaced becauseNormand Josef is distinguishable from the present case. According to the plaintiff, because Norman Josef did not involve § 42a-4-303, as is the case here, the Supreme Court did not acquire the opportunity to interpret the meaning of "reasonable time" as used in that statute. Thus, the precise issue presented by the parties' positions in this case is one of first impression in Connecticut: in evaluating when a bank should process a prejudgment garnishment, should the phrase "reasonable time" as used in § 42a-4-303 be determined by the bank's midnight deadline.
The plaintiffs view that "reasonable time" under § 42a-4-303 is fact specific and is not governed by the midnight deadline does have some support. For example, the legislature could have explicitly said in the statute that a bank's actions under § 42a-4-303 are governed by the "midnight deadline," rather than using the more general phrase "reasonable time." Indeed, the official comment to § 4-303 of the CT Page 10362 Uniform Commercial Code does not discuss this time period in terms of the midnight deadline and appears to be more supportive of the plaintiffs position.[5] The leading commentators also appear to be sympathetic to the plaintiffs view. As explained by one commentator on this issue:
 A "reasonable time" requires that there be sufficient time not only for the bank employee exercising reasonable diligence to communicate the order, notice or process to the person who makes the decision to pay the item, but also for the responsible person to act on the information. Considering the pervasive use of computers, the speed in which information can be imputed and the virtually instantaneous transmission of the information to whom it is transmitted, a "reasonable time" should generally be no more than one hour or so.
7 Anderson, Uniform Commercial Code (3d Ed. 2000) § 4-303:13, p. 321; see also 2 J. White R. Summers, supra, § 21-7, pp. 404-05 ("Just what constitutes a reasonable time is an open question. Presumably the answer turns not only on banking practices in the particular community, but also on a particular bank's situation.")
Although the parties have not cited, and the court has not located, any cases on point, analogous, out of state cases involving stop payment orders indicate that a "reasonable time" under § 42a-4-303 involves a case-by-case, factual evaluation. See, e.g., Stanek v. National Bank ofDetroit, 171 Mich. App. 734, 430 N.W.2d 819 (1988) ("[I]t is for the trier of fact to determine what length of time constitutes a `reasonable opportunity to act' . . ."); Chute v. Bank One of Akron, 10 Ohio App.3d 122,460 N.E.2d 720 (1983) (the court found that reasonable time to honor a stop payment order was the day after the order was received); Dunbar v.First National Bank of Scotia, 63 App.Div.2d 755, 404 N.Y.S.2d 722 (1978) (reasonable time to act on a stop payment order is a question of fact for the jury).
Nevertheless, in evaluating this issue under Connecticut law, this court must consider the whole body of statutory law as designed by the General Assembly, especially General Statutes §§ 52-367a and 52-367b
(c); and this consideration must be guided by our Supreme Court's decision in Normand Josef. Although the court agrees with the plaintiff that Normand Josef did not involve a § 42a-4-303 priority dispute, the court finds the following aspects of that case instructive to the issues presented here. First, the court in Normand Josef, supra,230 Conn. 503, held that under § 52-367a, a bank's actions in processing post-judgment executions not involving § 42a-4-303 would be CT Page 10363 governed by the midnight deadline. The plaintiff's position would create the incongruous result that post-judgment executions on bank accounts would be subject to two different standards — one for § 42a-4-303
situations (where a "reasonable time" guideline would control) and one for non- § 42a-4-303 situations (where the bank's midnight deadline would control). Certainly, a more uniform and desirable approach would be to have one standard to provide clear guidance to the state's banking institutions.
Indeed, there can be no question that under § 52-367a as interpreted by the court in Normand Josef, § 42a-4-303's "reasonable time" provision would be governed by the midnight deadline in a post-judgment situation. As previously stated, § 52-367a provides that in a post-judgment context, a bank "shall act upon such execution according to section 42a-4-303 before its midnight deadline, as defined in section 42a-4-104." (Emphasis added.) In Normand Josef, supra,230 Conn. 500, the court stated that it was unclear whether the phrase "`before its midnight deadline' modifies the phrase `according to section42a-4-303' or `act upon such execution.'" In either event, however, it follows from the language of § 52-367a and the reasoning of NormandJosef that the midnight deadline controls when a bank should act on any post-judgment execution. Id., 502 ("[W]e are persuaded that the midnight deadline contained in article four is an appropriate definition of a reasonable time for a bank to act in response to a service of an execution under § 52-367a.") If the midnight deadline controls the meaning of "reasonable time" under § 42a-4-303 in a post-judgment
situation, there is no logical or persuasive reason why the midnight deadline should not control the meaning of "reasonable time" under this statute in a prejudgment situation as presented here.
As explained in Normand Josef, supra, 230 Conn. 501, not only is it appropriate for this court's interpretation of "reasonable time" to be "informed, by analogy, by the provisions of article four . . . [but additionally] courts must discharge their responsibility, in case by case adjudication, to assure that the body of the law — both common and statutory — remains coherent and consistent." (Citations omitted; internal quotation marks omitted.) (quoting, Fahy v. Fahy, 227 Conn. 505,513, 630 A.2d 1328 (1993).) A coherent and consistent interpretation of these statutes would not be accomplished by interpreting § 42a-4-303
as meaning one thing on a prejudgement basis under § 52-329 and something else on a post-judgment basis under § 52-367a. Therefore, the factual differences between the present case and Norman Josef are distinctions without legal significance and the reasoning of NormanJosef controls the disposition of this case.
The plaintiff's remaining arguments require little, additional CT Page 10364 discussion. Plaintiff argues that if the midnight deadline applies, it should operate as an absolute standard making a bank's conduct beyond the midnight deadline per se unreasonable, but still creating an issue of fact as to whether the bank's actions prior to the midnight deadline satisfied the reasonableness standard. In other words, the plaintiff opines that the midnight deadline should operate as a "safe harbor" for the plaintiffs benefit. This position obviously finds no basis under the statutory framework, because in this particular context, the midnight deadline is intended to act as a safe harbor for the bank, not the plaintiff. See generally, Normand Josef, supra, 230 Conn. 502, n. 14 ("The midnight deadline serves as a safe harbor provision for a payer bank because it does not become accountable for the amount of an item until after the midnight deadline has passed, unless, before the deadline has passed, it already has made final payment pursuant to General Statutes § 42a-4-215."); Eklof Marine Corp. v. American National Bank,232 Conn. 167, 171-72, 653 A.2d 795 (1995) (after receiving an execution, a bank may properly exercise a right of setoff before expiration of its midnight deadline).
This "safe harbor" view of the midnight deadline favoring the bank also addresses the plaintiffs next contention that the court should analyze the types of items paid by First Union before the bank's midnight deadline. As these transactions occurred within the "safe harbor" period of the midnight deadline, the plaintiffs claims that First Union is liable to the plaintiff for them must fail. See generally, NormandJosef, supra, 230 Conn. 502 ("[The court is] persuaded that the midnight deadline contained in article four is an appropriate definition of a reasonable time for a bank to act in response to a service of an execution. . . ."); Eklof Marine Corp. v. American National Bank, supra,232 Conn. 172 ("[O]nce a bank has been served with a valid execution order, the bank violates § 52-367a if it fails to execute its right of setoff within the applicable midnight deadline. A fortiori . . . a bank does not violate § 52-367a if . . . it executes its right of setoff before the expiration of its midnight deadline.")
The plaintiffs final argument is that this adoption of the midnight deadline as a baseline for the bank's response to an execution creates an irrebuttable presumption in violation of plaintiffs due process rights under Vlandis v. Kline, 412 U.S. 441, 93 S.Ct. 2230, 37 L.E.2d 63 (1973) (the Supreme Court in Vlandis held that a statutory, irrebuttable presumption that a nonresident continues that status after college admission for the purpose of determining lower, state resident, college tuition rates violates due process protections). However, the situation here bears no resemblance to the situation presented in Vlandis. Any conceivable due process concerns are resolved by the reasonable exercise of the state's regulatory power over commercial matters, and as explained CT Page 10365 in Normand Josef, supra, 230 Conn. 502, "[i]n order to achieve certainty and predictability in commercial dealings, `the drafters of the Code found it necessary to engage in line drawing' . . . such as by creating deadlines by which commercial actors were required to act upon certain events." In short, as there was no due process violation presented by the imposition of the midnight deadline in Normand Josef, there is similarly no due process violation presented with its imposition here.
In summary, under the midnight deadline of § 42a-4-104 (a) (10), the defendant was required to act by midnight on the next banking day on which the bank received the garnishment, which, in the present case was October 28, 1997. Because the defendant processed contested withdrawals before that time, the plaintiff cannot, as a matter of law, recover the amount of those withdrawals. Accordingly, to this extent, the defendant's motion for summary judgment should be granted. There is no dispute that when Union Trust froze RKE'S accounts at midnight on October 28, 1997, $60.97 remained in the accounts. The motion for summary judgment should be denied to this extent.
 III
CONCLUSION
Therefore, the defendant, First Union National Bank's motion for summary judgement is granted, except as to $60.97 which remained in the accounts of RKE Associates after the bank's midnight deadline and which have not been paid to the plaintiff, WD Acquisition LLC.
So ordered this 31st day of July 2001.
STEVENS, J.