DECISION AND JUDGMENT ENTRY
{¶ 1} The National Bank of Adams County appeals the Adams County Court's judgment finding that it improperly paid a check written by Denton Meade, and that Meade incurred $3,800 in damages as a result of that improper payment. The Bank contends that the trial court should have granted its motion for summary judgment because Meade did not serve a stop payment order upon the Bank within a reasonable time for the Bank to act upon it. Because the reasonableness of Meade's notice is a question of fact, we disagree. The Bank also asserts that the trial court erred in denying its motions for directed verdict because Meade did not prove that he provided the Bank with reasonable notice and did not prove that he incurred damages other than the mere debiting of his account. Because the record contains some evidence to support both of these elements of Meade's claim, we disagree. The Bank next asserts that the trial court erred in permitting Meade to offer evidence as to his attorney fees, court costs, and deposition costs. Because, absent statutory authority or bad faith, only the court may consider and award costs, we agree. The Bank also asserts that the trial court erred in overruling the Bank's motion for judgment notwithstanding the judgment and for a new trial. Because no evidence in the record supports the amount of the jury's award, we agree in part. However, the record contains sufficient evidence to support the jury's determination that the Bank improperly paid the check over a valid stop payment order and that Meade incurred some damages as a result. Therefore, we affirm the trial court's judgment as to the Bank's liability, but reverse and remand the trial court's judgment as to the issue of damages. On remand, the trial court shall grant in part the Bank's motion for judgment notwithstanding the verdict as it relates to damages and consider the Bank's motion for a new trial on the issue of damages.
 I. {¶ 2} Meade maintained a checking account at the Bank. In 2001, Meade entered into an agreement with the Adams County Lumber Company to purchase a yard barn for $2,784 and paid half the cost as a deposit. On the date of delivery, Friday, March 9, 2001, Meade issued a check to the Lumber Company for the remaining amount he owed on the barn, $1,406.79.
 {¶ 3} Meade was not satisfied with the barn. Therefore, at 5:55 p.m. on March 9, 2001, Meade called the Bank to place a stop payment order on his check. Jacqueline Evans took the stop payment order from Meade. She received all the information and authorization needed to stop payment on the check at that time.
 {¶ 4} Bank employees are supposed to enter stop payments into the computer immediately after taking them. However, Evans did not immediately enter the stop payment order into the computer because it was 6:00 p.m. on Friday, and the Bank closes at 6:00 p.m. on Fridays. Furthermore, the Bank's policy provides that any matters that are received after 2:00 p.m. on a Friday are treated as being received on the next business day, which was Monday, March 12, 2001 in this instance.
 {¶ 5} On the morning of Saturday, March 10, 2001, Greg Scott, an officer of the Lumber Company, presented the check in question for payment at the Bank. The Bank paid the check. On Monday, the Bank entered Meade's stop payment into the computer and charged Meade a $15 stop payment fee. Upon realizing that it already paid the check, on Tuesday the Bank credited the $15 stop payment fee back to Meade's account. On Thursday, the Bank deducted the amount of the check, $1,406.79, from Meade's account.
 {¶ 6} In the meanwhile, Meade contacted Greg Scott at the Lumber Company regarding his dissatisfaction with the barn. Scott sent workers to repair the barn on Saturday, March 10 and on Monday, March 12. However, Meade still was not satisfied. In particular, he was unhappy with the runners supporting the barn. Although his order with the Lumber Company specifically provided for four by six-inch runner boards, the Lumber Company used two by six-inch boards. The Lumber Company "laminated" the two by six-inch boards to make them stronger. However, carpenter Dennis Baker inspected the boards and determined that the boards were not laminated properly.
 {¶ 7} Meade hired Baker to repair the barn. Baker charged Meade approximately three hundred dollars to make the necessary repairs. Baker testified that properly laminated two by six-inch boards are just as strong as four by six-inch boards.
 {¶ 8} Meade filed suit against the Bank in the trial court seeking $5,000 in damages. The Bank filed a motion for summary judgment, which the trial court denied. At the subsequent jury trial the court permitted Meade to testify, over the Bank's objections, to the amount of his court costs, attorney fees, and deposition costs associated with this case. The Bank filed motions for directed verdict at the close of Meade's case and at the close of evidence, which the trial court denied.
 {¶ 9} The jury returned a general verdict finding the Bank liable to Meade in the amount of $3,800. The Bank filed motions for a new trial and for judgment notwithstanding the verdict, which the trial court denied. The Bank now appeals, asserting the following five assignments of error: "I. The court erred when it overruled the motion for summary judgment filed by the defendant. II. The court erred when it permitted the plaintiff to offer evidence as to his attorney fees, court costs and the cost of taking depositions. III. The trial court erred when it overruled the motion of the defendant for a directed verdict at the conclusion of the plaintiff's case and again at the conclusion of evidence. IV. The judgment of the court is not supported by any competent evidence and is contrary to law, and it is also against the manifest weight of the evidence. V. The trial court erred when it overruled the motion of the defendant for a new trial and for a judgment notwithstanding the verdict."
 II. {¶ 10} In its first assignment of error, the Bank contends that the trial court erred in denying its motion for summary judgment. Specifically, the Bank asserts that Meade did not issue the stop payment order within a reasonable time for the Bank to act upon it, and therefore that the trial court should have granted summary judgment in favor of the Bank.
 {¶ 11} Summary judgment is appropriate only when it has been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(A). See Bosticv. Connor (1988), 37 Ohio St.3d 144, 146; Morehead v. Conley (1991),75 Ohio App.3d 409, 411. In ruling on a motion for summary judgment, the court must construe the record and all inferences therefrom in the opposing party's favor. Doe v. First United Methodist Church (1994),68 Ohio St.3d 531, 535.
 {¶ 12} In reviewing whether an entry of summary judgment is appropriate, an appellate court must independently review the record and the inferences that can be drawn from it to determine if the opposing party can possibly prevail. Morehead, 75 Ohio App.3d at 411-12. "Accordingly, we afford no deference to the trial court's decision in answering that legal question." Id. See, also, Schwartz v. Bank-One,Portsmouth, N.A. (1992), 84 Ohio App.3d 806, 809.
 {¶ 13} R.C. 1304.32(A) provides that a customer may stop payment on any item drawn on the customer's account by issuing an order to the bank that describes the item with reasonable certainty and is received by the bank "at a time and in a manner that affords the bank a reasonable opportunity to act on it before any action by the bank with respect to the item * * *." What constitutes a reasonable time depends upon the facts of the case. See Chute v. Bank One of Akron, N.A. (1983), 10 Ohio App.3d 122.
 {¶ 14} In Chute, Bank One alleged that its customer, Mr. Chute, did not give it a reasonable opportunity to act upon his stop payment order when he gave an oral stop payment at one Bank One branch office, and a different Bank One branch office paid the check the following day. In ruling that Bank One had a reasonable opportunity to act upon Mr. Chute's order before it paid the check, the court considered the teller's testimony that stop payment orders are entered onto the computer upon receipt, where they are virtually immediately accessible to all Bank One tellers.
 {¶ 15} In this case, as in Chute, Meade gave notice one day, and the Bank paid the check the following day. Additionally, in this case, the same branch that took the stop payment order also paid the check. Moreover, Evans testified that the Bank's policy for stop payment orders is to enter them into the computer immediately, and that Meade's stop payment order may have shown up on the computer on Saturday if she had entered it on Friday. Based on this information, and construing the facts in the light most favorable to Meade, reasonable minds could conclude that Meade provided the Bank with the stop payment order within time for the Bank to act upon the stop payment order.
 {¶ 16} Accordingly, we overrule the Bank's first assignment of error.
 III. {¶ 17} In its second assignment of error, the Bank contends that the trial court erred in permitting Meade to testify regarding the amount he spent on court costs, attorney fees, and taking depositions. Meade contends that because he incurred these costs as a result of the Bank paying his check over a valid stop payment order, the costs are properly recoverable.
 {¶ 18} As a general rule, the costs and expenses of litigation, other than court costs, are not recoverable in an action for damages.Palmer v. Darby (1895), 2 Ohio N.P. 401; Vinci v. Ceraolo (1992),79 Ohio App.3d 640, 649. Attorney fees and costs may be awarded as an element of compensatory damages only if authorized by statute or if a jury finds that punitive damages are warranted. Pegan v. Crawmer (1991),79 Ohio St.3d 155; Roberts v. Mason (1959), 10 Ohio St. 277; Vinci at 649. Attorney fees and costs from litigation with a third party may be recoverable if the defendant's wrongful conduct caused the plaintiff to become involved in litigation with that third party. S D Mech.Contrs., Inc. v. Enting Water Conditioning Sys., Inc. (1991),71 Ohio App.3d 228, 241.
 {¶ 19} In this case, the statute providing for damages, R.C.1304.32(C), provides that a customer's recoverable loss for a bank's failure to honor a valid stop payment order "may include damages for dishonor of subsequent items * * *." The statute does not provide for recouping attorney fees and costs. Meade did not allege that the Bank acted in bad faith or that he is entitled to punitive damages. Additionally, although Meade argues that the Bank caused him to lose his bargaining power with the Lumber Company, Meade did not present any evidence that he incurred attorney fees or costs by engaging in litigation with the Lumber Company.
 {¶ 20} Absent statutory authority or an allegation of bad faith, attorney fees are improper in a compensatory damage award. Moreover, pursuant to Civ.R. 54(D), the trial court bears the responsibility of determining the amount of costs, if any, to award to the prevailing party in the litigation. See Gnepper v. Beegle (1992), 84 Ohio App.3d 259,263. Therefore, the trial court erred in permitting the jury to hear evidence regarding Meade's expenditures for his attorney fees and costs.
 {¶ 21} Accordingly, we sustain the Bank's second assignment of error.
 IV. {¶ 22} In its third assignment of error, the Bank contends that the trial court erred when it overruled the Bank's motion for a directed verdict. The Bank moved for a directed verdict both at the conclusion of Meade's case and at the close of evidence.
 {¶ 23} Civ.R. 50(A)(4) provides that, upon a proper motion for a directed verdict, the trial court must construe the evidence most strongly in favor of the party against whom the motion is directed and determine whether "upon any determinative issue [that] reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." The rule requires the trial court to give the non-moving party the benefit of all reasonable inferences that may be drawn from the evidence. Keeton v. Telemedia Co. of SouthernOhio (1994), 98 Ohio App.3d 405, 408, citing Broz v. Winland (1994),68 Ohio St.3d 521, 526. When determining a motion for a directed verdict, the trial court must submit an essential issue to the jury if there is sufficient credible evidence to permit reasonable minds to reach different conclusions on that issue. O'Day v. Webb (1972),29 Ohio St.2d 215, paragraph four of the syllabus. See, also, Strotherv. Hutchinson (1981), 67 Ohio St.2d 282, 284-285, quoting Hawkins v. Ivy
(1977), 50 Ohio St.2d 114, 115.
 {¶ 24} Although a motion for directed verdict requires a trial court to review and consider the evidence, the motion does not present a question of fact or raise factual issues. Ruta v. Breckenridge-Remy Co.
(1982), 69 Ohio St.2d 66, paragraph one of the syllabus. A motion for a directed verdict tests the legal sufficiency of the evidence rather than its weight or the credibility of the witnesses. Ruta at 68-69. A motion for a directed verdict therefore presents a question of law, and we conduct a de novo review of the lower court's judgment. Howell v. DaytonPower Light Co. (1995), 102 Ohio App.3d 6, 13; Keeton at 409.
 {¶ 25} The Bank first asserts that the record does not contain sufficient evidence to show that Meade issued a stop payment order that provided it with a reasonable opportunity to act as required by R.C.1304.32(A). Meade presented evidence that he gave the Bank his stop payment order prior to 6:00 p.m. on Friday, and that the Bank paid the check the following day. Meade also presented the testimony of Evans, who admitted that the Bank's policy is to enter stop payment orders into the computer as soon as they are received. Evans and the Bank's Executive Vice-President, Christopher Harover, testified that the Bank's computer is slow on Fridays, and that the stop payment order may or may not have shown up on Saturday if Evans had keyed it into the computer. Evans also testified that she did not leave a note or otherwise communicate the stop payment order to the Saturday manager because she did not think the check would be presented over the weekend. We find that this constitutes sufficient evidence that Meade communicated the stop payment order to the Bank in time to allow the Bank a reasonable opportunity to act upon it.
 {¶ 26} The Bank also asserts that the record does not contain sufficient evidence that Meade incurred some loss resulting from its payment of the check. Pursuant to R.C. 1304.32(C), "[t]he burden of establishing the fact and amount of loss resulting from the payment of an item contrary to a stop payment order or order to close an account is on the customer." In establishing the fact and amount of loss, "the customer must show some loss other than the mere debiting of the customer's account." Chute at 125.
 {¶ 27} In this case, Meade testified that he felt he lost his bargaining power against the Lumber Company when it received payment for the barn before he was satisfied with it. Additionally, Meade and Baker testified that the runners under the barn were not the four by six-inch runners agreed upon, but laminated two by six-inch runners instead. Baker testified that the two by six-inch runners were not laminated properly, and therefore that they were too weak to support the barn for Meade's purposes. Meade testified that replacing the two by six-inch runners with four by six-inch runners would require taking the entire barn apart. Baker testified that he charged Meade between two hundred-eighty and three hundred dollars to properly laminate the runners and support the barn. Based upon these facts, we find that the record contains sufficient evidence that Meade sustained some loss beyond the mere debiting of his account as a result of the Bank paying his check.
 {¶ 28} Accordingly, we overrule the Bank's third assignment of error.
 V. {¶ 29} In its fourth assignment of error, the Bank contends that the judgment of the trial court is not supported by sufficient evidence and therefore is contrary to law, and that the judgment of the trial court is against the manifest weight of the evidence. In its final assignment of error, the Bank contends that the trial court erred in denying its motions for judgment notwithstanding the verdict and for a new trial. Because a motion for judgment notwithstanding the verdict tests the legal sufficiency of the evidence, and because Meade's motion for a new trial challenges the manifest weight of the evidence, we consider these assignments of error jointly.
 {¶ 30} A motion for judgment notwithstanding the verdict, like a motion for a directed verdict, tests the legal sufficiency of the evidence. Posin v. ABC Motorcourt Hotel (1976), 45 Ohio St.2d 271;McKenney v. Hillside Dairy Corp. (1996), 109 Ohio App.3d 164; see, also,Ruta, supra, at 68-69. Thus, the standard of review on a ruling to deny a motion for judgment notwithstanding the verdict is the same as that on a ruling to deny a motion for a directed verdict. Posin at 275. The issue is whether the record contains any competent evidence, when construed most strongly in favor of Meade, upon which reasonable minds could reach different conclusions. Meyers v. Hot Bagels Factory, Inc. (1999),131 Ohio App.3d 82, 92. Thus, the issue presents a question of law, which we review de novo. Id., citing Tulloh v. Goodyear Atomic Corp. (1994),93 Ohio App.3d 740.
 {¶ 31} When a party brings a motion for judgment notwithstanding the verdict, he may jointly bring a motion for a new trial. Civ.R. 50(B). In that instance, the trial court must rule on the motion notwithstanding the verdict first, and rule on the motion for a new trial only if the motion for judgment notwithstanding the verdict is granted. Staff Note to Civ.R. 50(C). See, also, Upshaw v. Cent. Foundry Div.,Gen. Motors Corp. (1992), 82 Ohio App.3d 636, 642. If the trial court grants the motion for judgment notwithstanding the verdict, "the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed [on appeal]." Civ.R. 50(C)(1).
 {¶ 32} In this case, the trial court denied the Bank's motion for judgment notwithstanding the verdict. Therefore, the trial court did not reach the Bank's motion for a new trial. Accordingly, we proceed to review the only ruling before us, that which denied the motion for judgment notwithstanding the verdict.
 {¶ 33} In considering the Bank's third assignment of error, we determined that the record contains sufficient evidence to support all the elements of Meade's claim. Specifically, we noted that Meade presented evidence that he ordered the Bank to stop payment on the check, evidence that the Bank could have acted on the stop payment order by immediately entering the order into the computer, and evidence that Meade incurred approximately $300 in repair costs on the barn.
 {¶ 34} However, unlike our consideration of the Bank's motions for a directed verdict, in considering the Bank's motion for judgment notwithstanding the verdict, we also must consider whether the amount of the jury's award is supported by sufficient evidence. The Bank contends the jury's general verdict, awarding Meade $3,800, is not supported by evidence in the record.
 {¶ 35} A bank customer seeking damages for the improper payment of a check over a valid stop payment order carries the burden of proving "the fact and amount of loss." R.C. 1304.32(C). To protect banks and prevent unjust enrichment to customers, the mere debiting of the customer's account does not constitute a loss. Chute, supra, at 124-125.
 {¶ 36} In this case, the Bank's payment of Meade's $1,406.79 check to the Lumber Company discharged Meade's debt to the Lumber Company in the same amount. Therefore, the mere debiting of $1,406.79 from Meade's account does not constitute a loss.
 {¶ 37} Meade presented evidence that he incurred $300 in repair costs to make the barn satisfactory. Meade also notes that he never got the four by six-inch runners he wanted. However, Meade's carpenter, Baker, testified that since he properly laminated the two by six-inch runners, they are just as strong or stronger than the four by six-inch runners would have been.
 {¶ 38} Meade also presented evidence of his costs and fees. However, as we determined in our review of the Bank's second assignment of error, only the court may award costs and fees, and therefore this evidence was improperly admitted. Thus, the evidence cannot support the damage award. Meade did not present any other evidence of loss incurred by the Bank's payment of his check.
 {¶ 39} Our review of the record reveals that it does not contain sufficient evidence to support the amount of damages awarded in this case. Meade proved that he expended approximately $300 to make the barn satisfactory. He presented no other evidence of damages. Therefore, we find that the trial court erred in declining to enter a judgment notwithstanding the verdict on the issue of damages. Upon remand, the trial court should grant in part the Bank's motion for judgment notwithstanding the verdict as it relates to damages and consider the Bank's motion for a new trial only on the issue of damages in accordance with Civ.R. 50(C).
 {¶ 40} Accordingly, we sustain the Banks fourth and fifth assignments of error in part.
 VI. {¶ 41} In conclusion, we find that the trial court did not err in denying the Bank's motions for summary judgment and for directed verdict. However, we find that the trial court erred in permitting Meade to testify as to his court costs, attorney fees and deposition costs. Additionally, we find that the trial court erred in totally denying the Bank's motion for judgment notwithstanding the verdict, as the amount of damages awarded by the jury is not supported by sufficient evidence in the record. Accordingly, we affirm the judgment of the trial court as to liability, but reverse the judgment of the trial court as to the issue of damages, and remand this cause for further proceedings consistent with this opinion.
JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CAUSE REMANDED.